**Terry Lee CAMERON, Jr., Plaintiff,**

v.

**Anthony METCUZ; G. Michael Broglin; and Daniel R. McBride, Defendants.**

**Civ. No. S 88–436.**

United States District Court, N.D. Indiana, South Bend Division.

Jan. 31, 1989.

As Corrected Feb. 10, 1989.

---

Terry L. Cameron, Jr., Westville, Ind., pro se.

John M. White, Deputy Atty. Gen., Indianapolis, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

### I.

On July 18, 1988, plaintiff *pro se*, Terry Lee Cameron, Jr., filed a complaint purporting to state a claim under 42 U.S.C. § 1983, and invoking this court's jurisdiction under Title 28 U.S.C. §§ 1331, 1343(a)(3) and (4). The motion to dismiss filed by defendants on September 12, 1988, demonstrates the necessary compliance with the mandates of *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982).

Plaintiff states three specific allegations which are set forth below in the plaintiff's own words:

(1) The Administration of the Westville Correctional Center has acted in an indifferent and callous manner.

(2) Their acts have led to a substantial harm to the Plaintiff by not protecting him from an attack by another inmate who was diagnosed as posotive (sic) for [Acquired] Immune Deficiency Syndrome (A.I.D.S.).

(3) The attack was pre-meditated and intentional, inflicting a bite wound, which, in light of the persons (sic) communicable and highly contagious disease has injured the Plaintiff in a manner which is of serious dimensions.

The administration, in knowing the character nature of the infected individual, of his violent and promiscuous institutional conduct in the past, acted in a "deliberate" and "callous" disregard for the Plaintiff's personal safety.

Plaintiff states an elaborate explication of his claims in Part V of his complaint. The

same is set forth in the plaintiff's own words, as follows:

## V. FACTUAL ALLEGATIONS

16. On June 14, 1988, at approximately 11:30 A.M., Plaintiff Cameron was in his bunk area when two inmates, Tillman Stroud # 854306, and Tony Hiter, began arguing loudly.

17. Plaintiff Cameron asked Stroud and Hiter to take the loud boisterous arguing away from his bunk area as the noise disturbed him.

18. On June 21, 1988, at approximately 1:00 P.M., Plaintiff Cameron was waiting on the "sun porch" of Dorm 7, G.S.C. Unit, waiting for his work assignment foreman to arrive, when inmate Stroud entered the sunporch, and without provocation attacked the Plaintiff.

19. Inmate Stroud merely wrestled until he obtained a firm grasp on Plaintiff's arm, and then "bit into" Plaintiff's index finger

20. Inmate Stroud maintained the hold on Plaintiff's arm and continued to bite into his finger until the wound was bone deep.

21. Plaintiff Cameron retaliated in a like manner and also only superficially bit inmate Stroud, who then released his grasp and "bite-hold."

22. The altercation then broke-up, with Inmate Stroud making it plain he "got-him", and that his act was totally premeditated and intentional.

23. On June 21, 1988, at approximately 10:15 P.M., Plaintiff Cameron went to the dispensary, and to avoid disciplinary after-effects for fighting, merely informed them the bone deep wound was caused by an accident where his finger was caught in a door.

24. On June 22, 1988, at 9:00 A.M. inmate Stroud was treated for the superficial wound he sustained, and the administration in the dspinsary (sic), once seeking his medical condition, demanded, on the threat to "lock him up" to explain the entire story.

25. On June 22, 1988, at approximately 2:00 P.M., Plaintiff Cameron was called to the dispensary, and informed that he must take a tetanus shot, and antibiotics.

26. On June 23, 1988, Plaintiff Cameron was called again to the dispensary, and was then told he must take a Hepatitis shot, and an increased dosage of antibiotics, and was told by Dr. Brodkin that the individual that had bitten him was affected (sic) with some type of Hepatitis.

27. On June 29, 1988, Wednesday, at approximately 11:00 A.M. Plaintiff Cameron was called again to the dispensary, and was met there by Defendant Metcuz (sic)[1] Defendant McBride, and an unknown R.N., along with Dr. Brodkin. Plaintiff Cameron was told at this time that it was possible he may have contracted the A.I.D.S. virus, and explained that inmate Stroud # 854306 had been diagnosed before the altercation as a carrier of the virus.

28. Under the law of the State, pursuant to IC 11–11–6–1(1), the Defendants herein are under the legal duty to provide a (sic) enviroment (sic) free from threat and physical danger.

29. The Defendants knew, or should have known that the inmate Tillman Stroud # 854306, was a predatory, violent, and dangerous individual, who in spite of this character nature, was allowed to remain within general population affected (sic) with a contagious and terminal disease.

30. The Defendants, individually and jointly, were negligent to their duties, to an extent that it became a "callous" and also a "deliberate" indifference to the Plaintiff's personal safety and well being.

31. To further the claims of indifference, it was known to the Defendants that inmate Stroud's institutional behavior pointed to the nature of his character, and he had been involved in, and disci-

---

1. Plaintiff's complaint names Anthony Metcuz as a defendant in this case. The correct spelling of the surname of this defendant is Metzcus.

plined for, many infractions relating to weapons and assaultive related behavior.

32. Inmate Tillman was incarcerated for a crime of violence, and past criminal history bespeaks his violent and aggressive nature.

33. Under the law, and promulgated policies within the Indiana Department of Corrections, an inmate who is infected with a contagious disease is to be segregatd from the general population on a showing that his behavior may be "predatory or promiscuous." Pursuant to IC 11–10–3–2, and Health Care Policies promulgated by the department.

34. At all times mentioned herein in this complaint the Defendants acted under the color of state law. They are being sued in their individual and official capacity.

This court is well aware of its obligation to give the plaintiff the benefit of the doubt under *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). In this circuit *see Abdul–Wadood v. Duckworth*, 860 F.2d 280 (7th Cir.1988), and *Knox v. Cook County Sheriff's Police Dept.*, 866 F.2d 905 (7th Cir.1988). In this regard, it must be stated that the complaint is in a good lawyer-like form, of which this court is grateful. This court is especially impressed with the plaintiff's motion in opposition to defendants' motion to dismiss filed on October 19, 1988.

## II.

■ The defendants in this case are Anthony Metzcus, Director of Medical Services at the Westville Correctional Center (WCC), G. Michael Broglin, Superintendent of the WCC, and Daniel R. McBride, Director of General Services Complex at the WCC. In their official capacities, each of the state defendants is entitled to immunity for claims for money damages under the Eleventh Amendment of the Constitution of the United States. The Eleventh Amendment states as follows:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

*See Kashani v. Purdue University, et al.*, 813 F.2d 843 (7th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987); *Owen v. Lash*, 682 F.2d 648 (7th Cir.1982); and *Sheets v. Indiana Department of Corrections*, 656 F.Supp. 733 (S.D. Ind.1986). For recent authority consistent with *Kashani, supra, see Shannon v. Bepko*, 684 F.Supp. 1465 (S.D.Ind.1988). Therefore, any and all damage claims against defendants in their official capacities are now DISMISSED under the mandates of the Eleventh Amendment of the Constitution.

## III.

■ It is elementary that a level of personal involvement by the defendant must be alleged. The decisional law is clear that there must be individual participation and involvement by a defendant, and that the concept of respondeat superior cannot be the basis of a claim under § 1983. *See Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Rascon v. Hardiman*, 803 F.2d 269 (7th Cir.1986); *Wellman v. Faulkner*, 715 F.2d 269 (7th Cir.1983), *cert. denied*, 468 U.S. 1217, 104 S.Ct. 3587, 82 L.Ed.2d 885 (1984); *Duncan v. Duckworth*, 644 F.2d 653 (7th Cir.1981); and *Adams v. Pate*, 445 F.2d 105 (7th Cir.1971). With regard to defendant Broglin, there is no allegation of his personal involvement. Therefore, all damage claims against him are now DISMISSED. SO ORDERED.

## IV.

Given the status of the plaintiff as a *pro se* party, the court is reluctant to dismiss defendants Metzcus and McBride at this time on the basis of non-involvement, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (Fed.R.Civ.P.). The question is admittedly a very close one and a doubt is resolved in favor of the *pro se* plaintiff.

It is also elementary that a claim for negligence is not within the ambit of § 1983 under the cases of *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986), and *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). The court must take a preliminary hard look at this case to determine whether enough has been alleged to hold either defendant Metzcus or McBride responsible under the Eighth Amendment of the Constitution of the United States, as made applicable to the states in the Fourteenth Amendment of the Constitution of the United States.

This case is on the cutting edge of situations in which the parameters of deliberate indifference can be established in the context of inter-inmate violence. The most recent decision on this subject is *Goka v. Bobbitt*, 862 F.2d 646, 649–50 (7th Cir.1988), in which Judge Grant states as follows:

Originally designed to protect federal prisoners from barbarous treatment at the hands of their jailors, the Eighth Amendment prohibition against cruel and unusual punishment has been expanded under the Due Process Clause of the Fourteenth Amendment to impose upon both federal and state correctional officers and officials the obligation to take reasonable steps to protect inmates from violence at the hands of other inmates. *See Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984); *Archie v. City of Racine*, 847 F.2d 1211, 1222–23 (7th Cir. 1988) (*en banc*); *Richardson v. Penfold*, 839 F.2d 392, 395 (7th Cir.1988); *Anderson v. Gutschenritter*, 836 F.2d 346, 349 (7th Cir.1988); *Duckworth v. Franzen*, 780 F.2d 645, 651 (7th Cir. 1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986).[2] When a correctional officer or prison official *intentionally* exposes a prisoner to a known risk of violence at the hands of another prisoner, he breaches the duty imposed upon him and deprives the victim of the security to which he is constitutionally entitled, and thus subjects himself to suit under 42 U.S.C. § 1983. *Smith–Bey v. Hospital Administrator*, 841 F.2d 751, 758 (7th Cir.1988); *Richardson*, 839 F.2d at 394–95; *see also Duckworth*, 780 F.2d at 652. Negligence, or even gross negligence, on the part of a prison official will not establish a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 332–33, 106 S.Ct. 662, 665–66, 88 L.Ed.2d 662 (1986); *Smith–Bey*, 841 F.2d at 759; *Duckworth*, 780 F.2d at 653. The official's actions must be deliberate or reckless in the criminal sense. *Duckworth*, 780 F.2d at 652–53. *See also Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986) ("only the 'unnecessary and wanton infliction of pain' ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment"); *Archie*, 847 F.2d at 1222 ("the state must protect one prisoner from another, at least when it acts (or stands by) deliberately or with indifference to the prisoner's plight"). Recklessness, in the pertinent sense, "implies an act so dangerous that the defendant's knowledge of the risk can be inferred," *Duckworth*, 780 F.2d at 652, and reflects an extreme or complete indifference to the value of human life. *Archie*, 847 F.2d at 1219.

\* \* \* \* \* \*

[2] As a convicted criminal, Goka's constitutional claim arises under the Eighth Amendment Cruel and Unusual Punishment Clause, and not the Due Process Clause of the Fourteenth Amendment. *Walsh v. Mellas*, 837 F.2d 789, 791 n. 2 (7th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988). "Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecution ... [T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." *Ingraham v. Wright*, 430 U.S. 651, 671–72 n. 40, 97 S.Ct. 1401, 1412–13 n. 40, 51 L.Ed.2d 711 (1977). *See also Anderson v. Gutschenritter*, 836 F.2d 346, 348–49 (7th Cir.1988) (Due process, and not Eighth Amendment prohibition against cruel

and unusual punishment, protects rights of a pretrial detainee not to be punished).

The reasoning and result in *Goka*, as well as in *Richardson, supra*, causes this court considerable hesitancy in dismissing this claim *in toto*. In regard to the deliberate indifference standard, Judge Nordberg in *Santiago v. Lane*, 697 F.Supp. 300, 303 (N.D.Ill.1988) stated:

> The Seventh Circuit has therefore required prison inmates to show that defendant prison officials, guards, and other prison employees acted with "deliberate indifference" to the inmate's need for protection. Exactly what amounts to "deliberate indifference" is not perfectly settled. *Compare Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir.1985) (criminal recklessness), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986) *with Benson v. Cady*, 761 F.2d 335, 339–40 (7th Cir.1985) (gross negligence); *see, e.g., Richardson*, 839 F.2d at 394–95 (citing both *Duckworth* and *Benson*, and applying *Benson*'s gross negligence standard).

There is considerable doubt whether *Benson*'s gross negligence standard should apply. *Duckworth* fully explains why gross negligence is not enough to constitute punishment (let alone cruel and unusual punishment), 780 F.2d at 652–53, and the Supreme Court has approvingly cited to *Duckworth* for its criminal recklessness standard.[3] *Whitley*, 106 S.Ct. at 1085; *see Childers v. Lane*, No. 85 C 7770 (N.D.Ill. May 2, 1988) [1988 WL 45503] (LEXIS, Genfed library, Dist. file) (discussing *Whitley* and *Duckworth*). Nevertheless, because the Seventh Circuit has most recently applied the *Benson* gross negligence standard, *Richardson*, 839 F.2d at 395, and because this Court finds that the decision on defendants' motion will not be affected by the difference between the standards, the Court will apply the *Benson* gross negligence standard to the facts in this case.

\*     \*     \*     \*     \*     \*

[3] *Duckworth* states that criminal recklessness can be shown where the defendant had "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." 780 F.2d at 653.

■ This case also may be on the cutting edge in regard to working out the parameters of deliberate indifference in the context of the Acquired Immune Deficiency Syndrome, commonly known as AIDS, in the prison setting. The only case in this circuit that has directly addressed any aspect of the AIDS epidemic as it emerges in the prison setting is Chief Judge Crabb's opinion in *Woods v. White*, 689 F.Supp. 874 (W.D.Wis.1988), which deals with privacy issues that are not directly relevant in this case.

There are three cases on this subject in the Eighth Circuit that are worthy of attention. *See Glick v. Henderson*, 855 F.2d 536 (8th Cir.1988); *United States v. Moore*, 846 F.2d 1163 (8th Cir.1988); and *Muhammad v. Carlson*, 845 F.2d 175 (8th Cir. 1988). The *Moore* decision, being a criminal prosecution, is of interest here only for its historic value. The *Glick* decision is no more than an expanded authority for the responsibility of medical personnel at a prison with respect to the subjective fear of AIDS. *Glick*, like *Moore*, does not directly answer the question here. *Muhammad*, however, is instructive. *Muhammad* is an inmate case in which it was alleged that an inmate was deprived of a constitutionally protected liberty interest when he was transferred to and confined in a restricted AIDS unit. The Court of Appeals, affirming the District Court, held that an inmate who has AIDS does not have a liberty interest in avoiding the established regulations in regard to identifying, treating and isolating those carrying the AIDS virus. *Muhammad*, 845 F.2d at 178–79.

Notwithstanding the specific teaching of *Richardson, supra*, and *Goka, supra*, this court is hard pressed to find sufficient allegations of deliberate indifference. This court has been specifically involved in that subject. *See Musgrove v. Broglin*, 651 F.Supp. 769 (N.D.Ind.1986); and *Burris v. Kirkpatrick*, 649 F.Supp. 740 (N.D.Ind. 1986).

Giving the plaintiff the benefit of every doubt as the court must under *Haines, supra*, the allegations do not rise to the level of an Eighth Amendment violation. Therefore, plaintiff's Eighth Amendment claim is DISMISSED WITHOUT PREJUDICE. It must be emphasized that this is *not* a final judgment under Rule 58, Fed.R. Civ.P., and *Smith–Bey v. Hospital Administrator, et al.*, 841 F.2d 751 (7th Cir.1988).

## V.

Plaintiff's complaint also purports to allege in vague terms that the actions of defendants Metzcus and McBride denied the plaintiff due process protections guaranteed by the Fourteenth Amendment. Specifically, plaintiff alleges that Indiana Code § 16–1–9–2 (West 1984) somehow creates a liberty interest in remaining free from inmates infected with the AIDS virus who pose a threat of serious harm to the general prison population. Indiana Code § 16–1–9–2 provided in full:

> Sec. 2. It shall be the duty of all physicians to immediately report to the health officer designated by the state board all cases under his care of communicable diseases which are required to be reported by the rules of the state board. When no physician is in attendance on such a case, it shall be the duty of the householder or the responsible officer of an institution, hotel or lodging place where such a case occurs to report the case to the local health officer in whose jurisdiction the case is.

■ The claim by plaintiff that Indiana Code § 16–1–9–2 creates a due process liberty interest in remaining free from violent, AIDS-infected prisoners places this court in an awkward position. The plaintiff is apparently unaware of the fact that Indiana Code § 16–1–9–2 was repealed by the Indiana General Assembly in 1987, effective September 1, 1987. *See* 1987 Ind. Acts 2272, 2279; Pub.L. No. 196–1987, Sec. 5. Apparently due to public concern over the AIDS epidemic, Indiana Code § 16–1–9–1 et seq. was repealed and replaced by a new set of statutes for reporting and preventing the spread of communicable diseases. *See* 1987 Ind. Acts 2272; Pub.L.No. 196–1987, Sec. 1–4 (codified at Ind.Code § 16–1–9.5–1 et seq. (West 1988)). *See also* 1988 Ind. Acts 1698; Pub.L. No. 123–1988, Sec. 8 (codified at Ind.Code § 16–1–10.5–1 et seq. (West 1988)).[2] The new statutes include, among other things, a special provision for reporting AIDS diagnoses. *See* Ind.Code § 16–1–9.5–2. The statutes replacing Indiana Code § 16–1–9–2 were effective September 1, 1987, well before the facts of this case. The first issue for this court, therefore, is whether this court should address the liberty interest issue when the plaintiff is contending a liberty interest arises from a repealed statute. Given the status of plaintiff as a *pro se* party and the fact that the new statutes were in effect at the time of the facts of this case, this court will address the issue of whether Indiana's recently enacted scheme for reporting and preventing the spread of communicable diseases creates a liberty interest which can be effectuated by the plaintiff.

The new AIDS reporting statute reads in relevant part:

\* \* \* \* \* \*

> (b) Each:
>
> (1) physician licensed under IC 25–22.-5;
>
> (2) hospital licensed under IC 16–10–1; and
>
> (3) medical laboratory;
>
> shall report to the state board [of health] *each case of human immunodeficiency virus (HIV) infection, including* each confirmed case of acquired immune deficiency syndrome (AIDS). *This report must comply with rules adopted by the state board. The report must indicate, if known, whether the individual had undergone any blood transfusions before being diagnosed as having AIDS, the place transfusions took place, and*

---

**2.** The 1988 legislation, effective July 1, 1988, supplements the 1987 legislation by providing additional guidelines and procedures for preventing and controlling the spread of communicable diseases. This legislation was effective after the facts of this case.

*the blood center that furnished the blood.*

_* * * * * *

(d) A person who fails to report information as required by this section commits a Class A infraction.

Ind.Code § 16-1-9.5-2 (amended by Pub.L. No. 123-1988, Sec. 2) (1988 amendments emphasized).

In addition to specific reporting requirements for AIDS, the legislature also included a provision granting Indiana health officials the power to *restrict,* and even *isolate,* individuals with communicable diseases who pose a serious threat to the public health. This provision states in full:

Sec. 4. If:
(1) an individual is diagnosed as having a communicable disease or other disease that is a danger to health;
(2) after being informed of that diagnosis, the secretary or the local health officer determines that the individual presents a serious and present danger to health according to rules adopted under this chapter; and
(3) the secretary or local health officer obtains a court order for restrictions upon the individual, which may include isolation, based upon a showing of clear and convincing evidence of the serious and present health threat to others posed by the individual;

the secretary or the local health officer shall implement the least restrictive but medically necessary procedures to protect the public's health. Any hearing held under this section shall be held in camera at the request of the individual. Ind.Code § 16-1-9.5-4.

The State Board of Health subsequently promulgated final rules pursuant to the reporting and preventative measures enacted by the Indiana General Assembly. *See* 11 Ind.Reg. 12, September 1, 1988 (to be codified at 410 IAC 1-2.1 et seq.). The new rules, effective August 27, 1988, provide further guidance for taking preventative measures under Indiana Code § 16-1-9.5-4. First, the rules add the disease AIDS to a list of dangerous communi-

cable diseases which are subject to the preventative measures prescribed by Indiana Code § 16-1-9.5-4. *See* 410 IAC 1-2.1-2(d). AIDS carriers, therefore, can be restricted, or even isolated, pursuant to Indiana Code § 16-1-9.5-4. Secondly, the rules provide a list of measures to protect the public health which include but are not limited to requiring individuals with communicable diseases to:

* * * * * *

(D) cease and desist conduct which constitutes a health threat to others;
(E) be monitored by an electronic monitoring device to prevent activities which constitute a health threat to others; [and]
(F) live part time or full time in a supervised setting[.]

* * * * * *

410 IAC 1-2.1-6(a)(6). Lastly, the rules define "serious and present danger to health", as that term is used in Indiana Code § 16-1-9.5-4, to include, among other things:

* * * * * *

(B) repeated behavior by a carrier which has been demonstrated epidemiologically to transmit, or which evidences a careless disregard for the transmission of, the disease to others; [or]
(C) a substantial likelihood that a carrier will repeatedly transmit the disease to others as is evidenced by a carrier's past behavior, or by statements of a carrier that are credible indicators of a carrier's intention[.]

* * * * * *

410 IAC 1-2.1-6(a)(7). *See also* Ind.Code § 16-1-10.5-9 (conditions warranting serious and present danger).

The next issue for this court is whether the above-quoted statutes and regulations apply not only to the general public, but also to the prison population. Indiana courts have not had an opportunity to rule on this question. It certainly appears, however, that the new procedures would apply with equal force to prisoners infected with AIDS. First of all, with the exception of Indiana Code § 16-1-10.5-18 (reporting requirements for released prisoners), no

Indiana statute or regulation has been found which specifically addresses AIDS in the context of a prison. And secondly, the Department of Corrections must comply with Indiana Board of Health statutes and regulations, *see* Indiana Code § 11–11–6–2, and it is clear that the reporting and preventative measures are the responsibility of the State Board of Health. For the sake of discussion, this court will assume that medical personnel and health officials responsible for the health and welfare of persons committed to the Department of Corrections are subject to the reporting and preventative measures enacted by the Indiana legislature.

■ Assuming the recently enacted scheme for reporting and preventing the spread of communicable disease applies in the prison setting, the next question for this court is whether the new statutes create a liberty interest in the plaintiff to remain free from violent, AIDS–infected inmates. Judge Cummings for the Seventh Circuit recently stated the test which a prison must satisfy in order to invoke due process protections under the Fourteenth Amendment:

> Prisoners claiming a due process violation under the Fourteenth Amendment must demonstrate that they have been deprived of a protected liberty or property interest by arbitrary government action. *Meachum v. Fano,* 427 U.S. 215, 223–224, 96 S.Ct. 2532, 2537–2538, 49 L.Ed.2d 451. These interests may arise from the Constitution, see *Vitek v. Jones,* 445 U.S. 480, 493–494, 100 S.Ct. 1254, 1263–1264, 63 L.Ed.2d 552; cf. *Newbury v. Prisoner Review Board,* 791 F.2d 81, 85 (7th Cir.1986), statutes, see *Greenholtz v. Inmates of Neb. Penal & Correctional Complex,* 442 U.S. 1, 7–11, 99 S.Ct. 2100, 2103–2106, 60 L.Ed.2d 668; *Walker v. Prisoner Review Board,* 769 F.2d 396, 400 (7th Cir.1985), certiorari denied, 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 791; but see *Harris v. Fleming,* 839 F.2d 1232 (7th Cir.1988) (prisoners ordinarily have no liberty or property interests in receiving or retaining a job while in prison); *Toney–El v. Franzen,*

777 F.2d 1224, 1226–1227 (7th Cir.1985) (where state remedies are adequate, inmate has no constitutionally protected liberty interest in early release despite state statute affording good time credits), certiorari denied, 476 U.S. 1178, 106 S.Ct. 2909, 90 L.Ed.2d 994, and administrative regulations, see *Hewitt v. Helms,* 459 U.S. 460, 471–472, 103 S.Ct. 864, 871–872, 74 L.Ed.2d 675; *Fleury v. Clayton,* 847 F.2d 1229, 1230, 1232 (7th Cir.1988); cf. *Mathews v. Fairman,* 779 F.2d 409, 414–415 (7th Cir.1985) (regulation on administrative transfers did not limit official discretion and did not create protected liberty interest). See generally *Caldwell v. Miller,* 790 F.2d 589 at 602.

*Williams v. Lane,* 851 F.2d 867, 879–80 (7th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 879, 102 L.Ed.2d 1001 (1989). Liberty interests protected by the Fourteenth Amendment, therefore, originate either in the Constitution or under state laws. *See Vitek, supra* and *Greenholtz, supra.*

The plaintiff is contending that Indiana created a liberty interest protected by the Due Process Clause through its enactment of certain procedures for reporting and preventing the spread of communicable diseases. It is the view of the Seventh Circuit that procedural guidelines do not give rise to a liberty interest protected by the Fourteenth Amendment. *Culbert v. Young,* 834 F.2d 624, 628 (7th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1296, 99 L.Ed.2d 506 (1988). Rather, the state must use "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed and that [the challenged action or inaction, as the case may be, of prison authorities] will not occur absent specified substantive predicates...." *Hewitt v. Helms,* 459 U.S. 460, 471–472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675 (1983). "The test for whether a statutory or regulatory procedure creates a protectable due process interest, then, hinges on the actual language used by the legislature or agency." *Cain v. Lain,* 857 F.2d 1139, 1144 (7th Cir.1988). *See also Culbert,* 834 F.2d at 628 (no liberty interest created by permissive rather than mandatory language).

This court rejects the plaintiff's argument that the scheme for reporting and preventing the spread of communicable diseases creates a liberty interest which can be effectuated by the plaintiff. The relevant provision of the new law provides that "*if:* . . . after being informed of that [communicable disease] diagnosis, the secretary or the local health officer determines that the individual presents a serious and present danger to health . . . the secretary or local health officer shall implement the least restrictive but medically necessary procedures to protect the public's health." Ind.Code § 16–1–9.5–4 (emphasis added). The key word in this statute is "if". Such language is permissive and clearly leaves unfettered discretion with Indiana health officials. Such language is far from the "heavy mandatory language which existed in the . . . *statutes* which were reviewed in *Hewitt.*" *Shropshire v. Duckworth*, 654 F.Supp. 369, 375 (N.D.Ind.1987) (emphasis in original).

Indiana health officials have the discretion to determine whether AIDS–diagnosed individuals who pose a serious threat to society should be restricted or isolated from the public.[3] The statute does not employ the language of "must" "shall" or "will", *see Hewitt, supra.* The statute does provide that health officials "*shall* implement the least restrictive but medically necessary procedures to protect the public's health." Ind.Code § 16–1–9.5–4 (emphasis added). But this mandatory language only takes effect after an initial determination has been made that the individual posed a serious and dangerous threat to society. The initial determination is clearly discretionary with health officials. The legislature has merely established procedural guidelines to channel official discretion. *See Culbert*, 834 F.2d at 629. As the Supreme Court in *Hewitt* noted "[i]t would be ironic to hold that when a state embarks on such desirable experimentation it thereby opens the door to scrutiny by the federal courts, while States that

choose not to adopt such procedural provisions entirely avoid the strictures of the Due Process Clause." 459 U.S. at 471, 103 S.Ct. at 871.

This analysis is consistent with *Mayo v. Lane*, 867 F.2d 374 (7th Cir. 1989), the most recent Seventh Circuit opinion in this area. In *Mayo*, Judge Flaum, in a concurring opinion, found that an Illinois Administrative Directive contained mandatory language closely resembling the language of the statutes in *Hewitt, supra. Id.* at 382–83. He concluded, therefore, that Illinois established a liberty interest in visitation that can be effectuated by a visitor of a prison. The statutory and regulatory scheme in this case does not contain the mandatory language like the Illinois Administrative Directive in *Mayo.*

The plaintiff is attempting to extract a constitutionally protected liberty interest from state procedures enacted to protect the public's health. The essence of plaintiff's argument is that these procedures were not followed and thus he suffered injury. This court is mindful that "[§] 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort." *Baker v. McCollan*, 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). Furthermore, to the extent that the plaintiff is asserting purely state law claims, or the violation of statutorily-created state rights, the same is foreclosed under the *Pennhurst v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), interpretation of the Eleventh Amendment of the Constitution of the United States.

It is not clear from the plaintiff's complaint whether he is also contending that the Due Process Clause of the Fourteenth Amendment in and of itself implicates the liberty interest he seeks to vindicate. Even if this is an alternative contention, the Su-

---

**3.** Further support for this proposition can be found in the language of the 1988 legislation, effective after the facts of this case. *See, e.g.,* Ind.Code § 16–1–10.5–10 (the health officer

"may" investigate the conduct of a carrier), and Ind.Code § 16–1–10.5–12 (the health official "may" file a petition under Ind.Code § 16–1–9.5–4).

preme Court has ruled that a prisoner's liberty interest grounded in the Due Process Clause in and of itself affords an inmate no greater protection than does the Cruel and Unusual Punishment Clause under the Eighth Amendment. *Whitley v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 1088, 89 L.Ed.2d 251 (1986). As discussed previously, this court is hard pressed to find sufficient allegations of Eighth Amendment violations. Consequently, the Due Process Clause in and of itself does not provide the plaintiff with any relief.

Giving the plaintiff the benefit of every doubt as the court must under *Haines, supra,* the plaintiff has not alleged a claim for relief under the Due Process Clause of the Fourteenth Amendment. Therefore, plaintiff's due process claim is now DISMISSED WITHOUT PREJUDICE. Again, it must be emphasized that this is *not* a final judgment under Rule 58, Fed.R.Civ.P., and *Smith–Bey, supra.*

## VI.

This court is certainly well aware of its obligation to examine this *pro se* complaint in the light most favorable to the pleader, *see Haines, supra.* However, the complaint fails to allege how any constitutional rights of the plaintiff have been violated by the alleged conduct of the defendants, assuming, in a very liberal view, that the plaintiff has alleged any relevant conduct at all as to the defendants. As discussed previously, allegations of negligence are not within the ambit of § 1983. Furthermore, Indiana health officials have not been named as defendants in the complaint. For these reasons, the complaint is DISMISSED WITHOUT PREJUDICE with leave of the plaintiff to file an amended complaint no later than March 1, 1989. In the event that no such amendment is filed, the Clerk of this court shall enter judgment in favor of the defendants and against the plaintiff with each party to bear its own costs, under *Hatch v. Lane,* 854 F.2d 981 (7th Cir.1988). IT IS SO ORDERED.