Kalonji Ra'id JIHAD a/k/a James Dunville, Plaintiff,

v.

**Charles WRIGHT, Defendant.**

**No. 3:95–CV–0148AS.**

United States District Court,
N.D. Indiana,
South Bend Division.

May 28, 1996.

Kalonji Ra'id Jihad, Westville, IN, plaintiff pro se.

Martha J. Arvin, Office of Indiana Attorney General, Indianapolis, IN, for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Kalonji Jihad ("Jihad") filed this *pro se* action pursuant to 42 U.S.C. § 1983, and invoking this court's federal question subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(3). The complaint alleges that former Maximum Control Complex ("MCC") Superintendent Charles Wright violated Jihad's federally protected rights by placing him on restrictive medical separation status after he refused to take a tuberculosis ("TB") screening test. The motion for summary judgment filed by Defendant Wright pursuant to Fed.R.Civ.P. 56 demonstrates the necessary compliance with *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir.1982). The plaintiff filed an elaborate written response to Defendant Wright's summary judgment motion.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762 (7th Cir.1993). The party seeking summary judgment must demonstrate that there is no genuine issue of fact, and that the movant is entitled to judgment as a matter of law. *Id.; Duane v. Lane*, 959 F.2d 673, 675 (7th Cir.1992). If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the motion, the opponent must come forth with evidence to show what facts are in actual dispute. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695 (1990); *Sims v. Mulcahy*, 902 F.2d 524, 540 (7th Cir.), *cert. denied*, 498 U.S. 897, 111 S.Ct. 249, 112 L.Ed.2d 207 (1990). If the non-movant fails to do so, summary judgment is proper. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir.1990). A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. *Harbor House Condominium Ass'n v. Massachusetts Bay Ins. Co.*, 915 F.2d 316, 320 (7th Cir.1990).

The court must construe the facts as favorably to the non-moving party as the record will permit, *Brennan v. Daley*, 929 F.2d 346, 348 (7th Cir.1991), and draw any permissible inferences from the materials before it in favor of the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Prince v. Zazove*, 959 F.2d 1395, 1398 (7th Cir.1992), as long as the inferences are reasonable. *Bank Leumi Le–Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir.1991).

Jihad alleges that in late January, 1995, an MCC nurse asked him to take a Mantoux tuberculosis test by injection, which Jihad characterizes as a "poison injection." Jihad told the nurse that the injection was against his religious beliefs but that he was willing to take a chest x-ray. On February 2, 1995, Supt. Wright ordered Jihad to be moved to a

different part of the MCC which had been set up as a medical separation or tuberculosis quarantine area. Jihad remained in the medical separation unit until July 21, 1995. He alleges that several other inmates, including some who had previously tested positive for TB, were also placed in the medical separation unit. Jihad alleges that not all MCC inmates or employees were asked to take the test and that some inmates who did not take the test were not placed in medical separation. Jihad alleges that while he was medically separated, for a period of almost six months, he was not allowed either inside or outside recreation, could not visit the institutional law library, could not have telephone calls or visits, could not have daily showers, could not receive a hot food tray, and had to wear a blue surgical mask.

Jihad asserts that requiring him to take a TB injection test or be placed in medical separation violated his right to exercise his religious beliefs as secured by the First Amendment and the Religious Freedom Restoration Act ("RFRA"). He further alleges that the conditions in the medical separation unit violated the Eighth Amendment's prohibition against cruel and unusual punishment. Finally, he asserts that his Fourteenth Amendment rights were violated because Defendant Wright forced him to live in restricted conditions worse than those in disciplinary lockup without due process.

In support of his summary judgment motion, the defendant submits his declaration, the declaration of Nurse Karen Heinrich, and certified copies of Jihad's medical records for the period January 1, through October 26, 1995. According to these submissions, Jihad refused to take the TB test on January 27, 1995. Supt. Wright was advised of his refusal to take the test and ordered him placed in medical isolation. Defendant Wright's practice was to place inmates who refused to take the injection test in medical separation pending the Indiana Board of Health obtaining a court order allowing MCC to forcibly test them. Pursuant to this practice, Jihad was placed in medical separation and treated in all respects as if he had tested positive for TB and was infectious. Jihad was eventually returned to general population without having been subjected to a TB injection test or any other test to determine if he was positive for TB. Defendant Wright's submissions do not indicate that he pursued obtaining a court order through the Indiana Board of Health to have Jihad tested during the almost six months that he was in medical isolation. Defendant Wright does not contradict Jihad's characterization of conditions on the medical separation unit, but asserts that treating inmates on the unit as though they were TB positive necessitated limiting their movement.

The MCC is a closed environment where a contagious airborne communicable disease like TB can spread rapidly. According to Supt. Wright, the policy on medical separation was designed to protect other inmates and staff. According to Nurse Heinrich, the skin test is the least invasive method of determining if a person carries the TB antibody. A chest x-ray cannot be used in place of a skin test to make this determination, though x-rays are useful in determining if a person has an active case of TB. From the defendants' submissions, it does not appear that Jihad was ever given the TB injection, or any other screening test. In his response to request # 9 of the plaintiff's request for production of documents, the defendant admits that "(t)here are no medical records which indicate that the Plaintiff ever had a communicable disease." No reason is given for the decision to return Jihad untested to general population in July, 1995.

In response, Jihad submits a lengthy and well drafted memorandum of law, the affidavits of several MCC inmates, two pamphlets issued by the U.S. Department of Health and Human Services describing tuberculosis and TB testing, portions of his medical records and the Indiana Department of Correction policy on consent and refusal for medical testing and treatment, and several other documents. Jihad argues that it is not necessary to isolate prisoners who refuse to be tested, or even all inmates who test positive for TB, because TB is not infectious unless the person is symptomatic. Persons who test positive for TB may be asymptomatic and non-infectious. Only a small percentage of infected persons develop active TB, and

when they become symptomatic they become contagious.

## I.

Jihad seeks declaratory and injunctive relief and damages. Herbert Newkirk has replaced Charles Wright as MCC Superintendent, and in Jihad's appeal of the denial of his preliminary injunction, the Seventh Circuit substituted Mr. Newkirk for Mr. Wright as defendant in the official capacity portion of this action. This court, on its own motion, also substitutes Mr. Newkirk for Mr. Wright as defendant in the official capacity portion of this action pursuant to Fed.R.Crim.P. 43(c)(1). The Seventh Circuit determined that Jihad was released from quarantine on July 21, 1995, and on page 2 of its order issued on April 17, 1996, the court noted that "it is also apparent that the warden has never forced Jihad to submit to the tuberculosis test and has never given any indication of intending to force him."

Jihad's release from the medical separation unit and his return to general population moots his claims for injunctive relief, *O'Shea v. Littleton*, 414 U.S. 488, 495, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974); *Forbes v. Trigg*, 976 F.2d 308, 312 (7th Cir.1992), *cert. denied*, 507 U.S. 950, 113 S.Ct. 1362, 122 L.Ed.2d 741 (1993), and his declaratory relief claims. *See, e.g., Murphy v. Hunt*, 455 U.S. 478, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) (applying the capable-of-repetition doctrine without discriminating between claims for declaratory relief and claims for injunctive relief.) Accordingly, the court **GRANTS** summary judgment to Defendant Newkirk on Jihad's claims for injunctive and declaratory relief. Jihad's damage claims against Defendant Wright remain before the court.

## II.

Jihad claims, in his first and fourth causes of action, that placement in long term punitive medical isolation for the refusal to take a TB test by injection for religious reasons violated his rights under the First Amendment and the RFRA. To succeed under a First Amendment free exercise of religion claim, a plaintiff must demonstrate that prison regulations are not "reasonably related" to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987); *Johnson–Bey v. Lane*, 863 F.2d 1308 (7th Cir.1988). The Religious Freedom Restoration Act restored the "compelling interest" test for defense to claims that a facially neutral law of general applicability substantially burdens the free exercise of religion—a test that had been abandoned by the Supreme Court in *Employment Division, Department of Human Resources v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990). The RFRA requires the courts to apply the law as set forth in two earlier free exercise cases, *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963), and *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972). *See* 42 U.S.C. § 2000bb(b)(1). Under the RFRA, courts are to apply the compelling interest test to prison inmates' free exercise claims. *Jolly v. Coughlin*, 76 F.3d 468, 475 (2d Cir. 1996), and the defendant must show that the action taken by him was the least restrictive means to further the asserted compelling state interest. *Jolly*, 76 F.3d at 479.

In *Jolly v. Coughlin*, the Court of Appeals for the Second Circuit recently examined issues and circumstances similar in many respects to those presented by Jihad in the context of ruling on a request for preliminary injunction. Jolly was confined in the State of New York, and the New York Department of Corrections required inmates to be tested annually for TB by means of a purified protein derivative ("PPD") test.

> The PPD test involves injecting a small amount of purified protein into the skin; a skin reaction signifies that the individual has been infected with the bacteria that causes tuberculosis. Once an individual is infected, he will likely carry the bacteria forever. He may, however, show no symptoms of disease for some length of time; such an individual is said to have "latent" tuberculosis, which is not contagious under normal circumstances. Without treatment, approximately eight percent of persons

with latent TB will develop contagious, "active" TB.

*Jolly v. Coughlin,* 76 F.3d at 471–72.

Jolly, a Rastafarian, refused the PPD test, claiming that accepting artificial substances into the body was contrary to the tenants of his religion. In response, prison officials placed him in medical keeplock where he remained for the next three and a half years. Inmates in medical keeplock were severely restricted in a variety of ways, were not allowed out of cell recreation, and could only leave their cells for attorney visits or a ten minute shower once a week. Placement of Inmates in medical keeplock, however, "did not involve 'respiratory isolation'; thus, an individual who refused to submit to a PPD test would still share the same breathing space as other prisoners. Only an inmate with an abnormal chest x-ray, a positive sputum culture, or clinical symptoms suggestive of TB is segregated from the general population, and is placed in respiratory isolation." *Jolly v. Coughlin,* 76 F.3d at 472.

Jolly and Jihad both refused to take a TB injection test, asserting that it violated their religious convictions. New York prison officials reacted by putting Jolly in "medical keeplock," which meant that he remained in general population but was not allowed out of his cell and lived in very restricted conditions. Supt. Wright responded by putting Jihad in "medical separation," which meant that he was put on a unit separate from general population, apparently along with some inmates who had actually tested positive for TB, was not allowed out of his cell, and lived in very restricted conditions.

The *Jolly* Court determined that Jolly "had demonstrated a clear likelihood of success on the merits of his RFRA claim." *Jolly v. Coughlin,* 76 F.3d at 476.

The district court concluded that "(t)he plaintiff's steadfast adherence to his claim that submitting to the PPD test would violate the tenants of his religion, despite his continued confinement in medical keeplock, establishes that his right to the free exercise of religion has been substantially burdened." *Jolly* [*v. Coughlin*], 894 F.Supp. [734] at 743. [S.D.N.Y.1995]. We agree. Nonetheless, we note that the

district court need not have emphasized the extraordinary length of the plaintiff's confinement to medical keeplock as an indicator of a substantial burden. As cases decided prior to *Smith* make clear, a substantial burden exists where the state "put(s) substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Board of the Indiana Employment Sec. Div.,* 450 U.S. 707, 718, 101 S.Ct. 1425, 1432, 67 L.Ed.2d 624 (1981).... The choice here presented by the state—either submitting to the test or adhering to one's beliefs and enduring medical keeplock—itself constitutes a substantial burden.

*Jolly v. Coughlin,* 76 F.3d at 476–477.

Defendant Wright does not assert that Jihad's right to the free exercise of his religion was not substantially burdened, and the decision in *Jolly* indicates that his free exercise was substantially burdened. Neither does he challenge the sincerity or religious nature of Jihad's beliefs. Defendant Wright relies on the argument that the state's interest in preventing the spread of TB at the MCC overrides any interest Jihad might hold in the free exercise of his religion.

Under the RFRA, "(o)nce a plaintiff makes a threshold showing of a substantial burden on the right of free exercise, the government must demonstrate that the application of the burden to the individual furthers a compelling state interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000bb–1(b)." *Jolly,* 76 F.3d at 477. The *Jolly* Court recognized that "the state has a compelling interest in 'protecting inmates and DOCS staff from tuberculosis,'" *Jolly,* 76 F.3d at 477, but concluded that placing Jolly in medical keeplock was not the least restrictive method of achieving this goal.

To the extent that the government's interest is in protecting inmates and staff from tuberculosis, the defendants have not shown that the plaintiff's confinement is the least restrictive means of furthering that interest. Only *active* tuberculosis is contagious; the defendants' primary concern must therefore be to prevent the plaintiff from developing active tuberculo-

sis and thereby becoming a source of contagion. By identifying inmates with latent tuberculosis, the PPD test serves to identify those inmates at risk of developing active tuberculosis. The plaintiff, by refusing to take the PPD test, *is also at risk of developing active tuberculosis,* because his TB status is unknown. The defendants could treat him as an inmate at risk—as though he had tested positive and refused to take preventive medication. The defendants could require his periodic submission to chest x-rays and spatum samples.

*Jolly v. Coughlin,* 76 F.3d at 479 (emphasis in original).

■ Under this analysis, MCC officials should not have removed Jihad to a medical isolation unit, to be housed in very restricted conditions with TB positive inmates, simply because he refused to take a TB test by injection. As a less restrictive measure, officials could have treated him as an inmate at risk of developing active tuberculosis by requiring him to submit to periodic chest x-rays or spatum samples to determine if he had active TB and was therefore capable of infecting others. If he was found to be infectious then further steps would have been in order. Jihad states in his complaint, without contradiction by Defendant Wright, that he was willing to subject himself to less invasive forms of testing such as x-rays. Accordingly, the court **DENIES** summary judgment on the free exercise of religion claim.

### III.

In his second cause of action, Jihad asserts that Defendant Wright violated his Eighth Amendment rights by placing him in very restrictive living conditions while he was housed on the medical isolation unit. Jolly and Jihad were housed under similar circumstances, though Jolly was housed in restrictive conditions for three and a half years as opposed to six months for Jihad.

Defendant Wright concedes that Jihad was denied out of cell recreation while he was in medical isolation. According to his affidavit, inmates on the medical isolation unit were only allowed out of their cells every third day for showers. Defendant Wright argues that Jihad's movements were limited and he was denied out of cell recreation because to allow inmates in the recreation area would pose a risk to others. On the other hand, as Jihad suggests, it has never been determined that he was symptomatic and infectious, which could have been discovered by means other than the TB injection test to which Jihad objected.

■ The Eighth Amendment prohibits punishment that is "cruel and unusual." *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 2323, 115 L.Ed.2d 271 (1991). A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan,* 511 U.S. 825, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). In *Farmer,* the Supreme Court defined "deliberate indifference" as "criminal recklessness," adopting the standard previously applied by the Seventh Circuit. *Duckworth v. Franzen,* 780 F.2d 645, 652–53 (7th Cir.1985), cert. denied, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). To act recklessly, a person must "consciously disregard" a substantial risk of serious harm. *Farmer,* 511 U.S. at ——, 114 S.Ct. at 1980.

■ To meet subjective prong of the *Wilson* test, "deliberate indifference" exists "when a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'" *Jolly v. Coughlin,* 76 F.3d at 481, citing *Farmer v. Brennan,* 511 U.S. at ——, 114 S.Ct. at 1984. The defendant does not contest Jihad's description of conditions on the medical separation unit, nor does he assert that he was unaware of those conditions. The *Jolly* Court concluded that Jolly "was substantially likely to show that prison officials had acted with deliberate indifference," based on the "awareness of the defendants of the undis-

puted conditions and harm to the plaintiff." *Jolly v. Coughlin,* 76 F.3d at 481.

The objective prong of the *Wilson* test poses a closer question. Both Jolly and Jihad present similar allegations in regard to the conditions they lived in, and the effect of those conditions on them. The *Jolly* Court concluded that Jolly had shown that the conditions of his confinement constituted a sufficiently serious deprivation of basic human needs to justify the entry of a preliminary injunction. The conditions of which Jihad complains would not violate the Eighth Amendment over a short period of time, but some of them could violate the Eighth Amendment if imposed for a sufficient length of time.

■ In *Davenport v. DeRobertis,* 844 F.2d 1310 (7th Cir.), *cert. denied, by Lane v. Davenport,* 488 U.S. 908, 109 S.Ct. 260, 102 L.Ed.2d 248 (1988), the Seventh Circuit was "not disposed to quarrel" with a determination that only one hour of out of cell exercise a week over a protracted period of time would fall below the minimum decencies required by the Eighth Amendment. *Davenport v. DeRobertis,* 844 F.2d at 1314. In *Davenport,* the district court concluded that the Eighth Amendment required that any prisoner who had been confined in segregation for 90 days or more be allowed at least five hours of out of cell exercise per week. *Id.* at 1311. In the interest of caution, the court concludes that the intentional imposition of such a restrictive regime, where there was no determination that Jihad actually had an infectious communicable disease, for the length of time alleged here is sufficient to avoid summary judgment on the question of the amount of out of cell time he was allowed. Accordingly, the court **DENIES** Defendant Wright's summary judgment motion on the portion of this claim dealing with the amount of out of cell time Jihad received while he was in medical isolation.

## IV.

■ Finally, Jihad asserts, as his third cause of action, that Supt. Wright violated his Fourteenth Amendment rights by placing him in the tuberculosis quarantine unit without due process. The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law." Thus, a plaintiff seeking to establish a violation of the Fourteenth Amendment's Due Process Clause must establish that the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (citing *Parratt v. Taylor,* 451 U.S. 527, 537, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981)). A liberty interest may arise from state law or from the Due Process Clause itself. *Pardo v. Hosier,* 946 F.2d 1278, 1281 (7th Cir.1991).

■ The Due Process Clause does not protect against every change in the conditions of confinement having a substantial adverse impact on a prisoner. *Sandin v. Conner,* —— U.S. ——, ——, 115 S.Ct. 2293, 2297, 132 L.Ed.2d 418 (1995), citing *Meachum v. Fano,* 427 U.S. 215, 222, 96 S.Ct. 2532, 2537, 49 L.Ed.2d 451 (1976). Where the due process clause does not itself create protections, only a dramatic departure from the basic conditions of a prisoner's sentence can create circumstances "in which a state might conceivably create a liberty interest." *Sandin v. Conner,* —— U.S. at ——, 115 S.Ct. at 2301. Being placed in medical separation is a species of administrative segregation where an inmate is separated from general population by an administrative decision for the protection of others. The questions before the court are whether the due process clause creates a liberty interest in an inmate not being placed in long term medical isolation unless he actually has a communicable disease; if not, whether this could present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest; and if so, whether Indiana has created such a liberty interest.

In *Sandin v. Conner,* the Supreme Court determined that discipline by prison officials in response to a wide range of misconduct falls within expected parameters of a sentence imposed by a court of law, and that placement in disciplinary isolation where it did not exceed similarly but totally discre-

tionary confinement in either duration or degree of restriction did not implicate due process. The record showed that "at the time of Conner's punishment, disciplinary segregation, with insignificant exceptions, mirrored those conditions imposed upon inmates in administrative segregation and protective custody." *Sandin v. Conner*, at ——, 115 S.Ct. at 2301. Jihad asserts, without contradiction from Defendant Wright, that the conditions in medical isolation were worse than those in disciplinary lockup, and the court has already determined that, at least as to the amount of out of cell time afforded to Jihad, conditions on the medical isolation unit may have violated the Eighth Amendment.

Just as discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of a sentence imposed by a court of law, so too does placement of an inmate in medical isolation where he has an infectious communicable disease. Had Jihad been placed in medical isolation, even with extremely restrictive conditions, for the length of time it took to determine if he had a communicable disease, this court would have no problem holding that his due process rights had not been violated. This action is complicated by the fact that Jihad was kept in medical isolation for almost six months, in more restrictive conditions than other forms of segregation at MCC, without a determination that he had an infectious communicable disease when that determination could have been made without resorting to the skin test he objected to on religious grounds. Jihad was then apparently released to general population, still with no determination of whether he had a communicable infectious disease.

If avoidance of long term medical isolation in extremely restricted conditions is a dramatic departure from an inmate's sentence in which a state might conceivably create a liberty interest, the court would need to evaluate Indiana law to determine whether Indiana may have created a liberty interest. In *Cameron v. Metcuz*, 705 F.Supp. 454 (N.D.Ind.1989), this court assumed, without deciding, that "medical personnel and health officials responsible for the health and welfare of persons committed to the Department of Corrections are subject to the reporting and preventative measures enacted by the Indiana legislature." In that action, Cameron asserted violation of the Due Process Clause because prison officials had not isolated an HIV positive inmate who subsequently assaulted him. The court concluded that even assuming *arguendo* that Indiana's reporting and preventative measures applied to prisoners confined in the Indiana Department of Corrections, they created no liberty interest that benefited Cameron. In this action, however, the defendants admit that Jihad was placed on long term medical isolation without a determination having been made that he had a communicable disease. If Indiana could conceivably create a liberty interest for an inmate to avoid long term medical isolation unless he actually has an infections communicable disease, then the court will have to decide whether Indiana's reporting and preventative measures apply to inmates.

As part of a general revision of the statutes governing reporting and preventing the spread of communicable diseases, the Indiana legislature "also included a provision granting Indiana health officials the power to *restrict* and even *isolate*, individuals with communicable diseases who pose a serious threat to the public health." *Cameron v. Metcuz*, 705 F.Supp. at 461 (emphasis in original). Indiana Code § 16–1–9.5–4, which is quoted in its entirety in *Cameron v. Metcuz*, 705 F.Supp. at 461, provided that if an individual is diagnosed as having a communicable disease or other disease that is a danger to health, and the secretary of the local board of health or the health officer determines that the individual presents a serious and present danger to health then they can obtain a court order for restrictions upon the individual, which may include isolation, based upon a showing that the individual poses a clear and convincing evidence of the serious and present health threat to others. Officials were to implement the least restrictive but medically necessary procedures to protect the public's health.

The materials before the court discuss *Sandin* in very general terms, but do not address the questions of whether the due

**334**

process clause creates a liberty interest in an inmate not being placed in long term medical isolation in conditions worse than other forms of segregation at the institution unless he actually has a communicable disease; whether this would present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest; and whether Indiana has created such a liberty interest. The court is reluctant to rule on these questions without affording the parties the opportunity to present arguments on them. Accordingly, the court **DENIES** Defendant Wright's summary judgment motion on the due process claim, with leave to refile a summary judgment motion within sixty days.

### V.

Jihad filed a motion to amend his complaint. Portions of the proposed amended complaint deal with questions decided adversely to him in this memorandum, and it would be a futile gesture to allow the filing of the amended complaint in its present form. Accordingly, the court **DENIES** the plaintiff's request to amend his complaint, with leave to refile a revised amended complaint within thirty days.

### VI.

For the foregoing reasons, the court **GRANTS** the defendant's summary judgment motion [docket entry # 45] in part, and **DENIES** it in part. The court:

1. On its own motion, substitutes Mr. Newkirk for Mr. Wright as defendant in the official capacity portion of this action pursuant to Fed.R.Crim.P. 43(c)(1), and **GRANTS** summary judgment to Defendant Newkirk on the plaintiff's injunctive and declaratory relief claims;

2. **DENIES** the motion for summary judgment on the plaintiff's claim of violation of his right to free exercise of his religion under the First Amendment and the Religious Freedom Restoration Act;

3. **DENIES** the motion for summary judgment on the plaintiff's claim that total denial of out of cell recreation while he was in medical isolation violated the Eighth

Amendment's prohibition against cruel and unusual punishment. The court **GRANTS** Defendant Wright's motion for summary judgment on the plaintiff's other Eighth Amendment claims;

4. **DENIES** summary judgment to Defendant Wright on the claim that the plaintiff's long placement in medical isolation without a determination that he had an infectious communicable disease violated the Fourteenth Amendment's Due Process Clause, with leave to the defendant to file a summary judgment motion addressing that claim within sixty days of the date of this order;

5. **DENIES** the plaintiff's request to amend his complaint [docket # 52], with leave to the plaintiff refile a revised amended complaint within thirty days of the date of this order.

SO ORDERED.