**Hamid R. KASHANI,**
**Plaintiff-Appellant,**

v.

**PURDUE UNIVERSITY, et al.,**
**Defendants-Appellees.**

No. 85–2306.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1986.

Decided March 10, 1987.

William E. Marsh, Indiana University School of Law, Indianapolis, Ind., for plaintiff-appellant.

John C. Duffey, Stuart & Branigin, La-Fayette, Ind., for defendants-appellees.

Before BAUER, Chief Judge, WOOD, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

Hamid R. Kashani sued Purdue University and various of its officials under 42 U.S.C. § 1983, alleging that he was terminated from a doctoral program at Purdue University on the basis of national origin. The trial court held his claims both for damages and for reinstatement barred by the Eleventh Amendment. In this appeal we uphold the conclusion that Purdue University shares in the sovereign immunity of the State of Indiana under the Eleventh Amendment. We hold further, however, that the Eleventh Amendment does not bar suit against the officials for the injunctive relief of reinstatement into the doctoral program.

## I

Hamid R. Kashani, an Iranian, was terminated from the doctoral program in electrical engineering at Purdue University in Indiana during the "Hostage Crisis." He filed a section 1983 action, alleging discrimination on the basis of national origin contrary to the Equal Protection Clause. The suit named as defendants Purdue University; the trustees and president of the university, in their official capacities; various graduate school officials and members of the Ph.D. Review committee, in both their official and individual capacities. Kashani sought both monetary damages and reinstatement from all defendants, except for the claims against the officials in their individual capacities, which sought only monetary damages.

The district court dismissed for lack of subject matter jurisdiction the claims for monetary relief against the University and against the various officials in their official capacity on the basis that Purdue was entitled to the protection of the Eleventh Amendment. The court subsequently dismissed all claims for injunctive relief, on the basis of the Eleventh Amendment. To enable appeal, the parties stipulated to dismissal of the remaining claims for monetary relief against officials in their individual capacities. Kashani does not appeal these stipulated dismissals. Kashani thus appeals only the claims against the university and against its officials in their official capacity. Against both, Kashani seeks monetary and injunctive relief. For the reasons stated below, we hold that Purdue is an arm of the state entitled to the protection of the Eleventh Amendment. We thus affirm the dismissal of all claims against the university and all claims against the officials for monetary relief. We hold, however, that the injunctive relief of reinstatement is not barred by the Eleventh Amendment and thus reverse the dismissal

of the claims for injunctive relief against the officials in their official capacity.

## II

■ The jurisdictional bar of the Eleventh Amendment protects the state and its agencies; it does not shield political subdivisions. The question here, then, is whether Purdue "is more like a county or city than it is like an arm of the State." *Mount Healthy School District v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 573, 50 L.Ed.2d 471 (1977) (local school board not entitled to immunity). The question of sovereign immunity for a state university is not unexplored territory. The vast majority of cases considering the issue have found state universities to be forfended by the Eleventh Amendment. *E.g., Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299 (6th Cir.1984), *cert. denied,* 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985); *Cannon v. University of Health Sciences/The Chicago Medical School,* 710 F.2d 351 (7th Cir.1983) (Southern Illinois University and University of Illinois); *Jackson v. Hayakawa,* 682 F.2d 1344 (9th Cir.1982) (San Francisco State College); *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 558 (5th Cir.1982) (Stephen F. Austin State University); *Ronwin v. Shapiro,* 657 F.2d 1071, 1073 (9th Cir.1981) (University of Arizona); *Perez v. Rodriguez Bou,* 575 F.2d 21 (1st Cir.1978) (University of Puerto Rico); *Brennan v. University of Kansas,* 451 F.2d 1287 (10th Cir.1971). In fact, the parties' briefs and our own research have failed to reveal a single circuit court opinion holding a state university not entitled to Eleventh Amendment immunity. There are district court opinions to the contrary. *E.g., Samuel v. University of Pittsburgh,* 375 F.Supp. 1119 (W.D.Pa.1974), *rev'd on other grounds,* 538 F.2d 991 (3rd Cir.1976).

■ Although state universities have consistently been found to be entitled to immunity, courts reexamine the issue with regard to the facts of each case "because the states have adopted different schemes, both intra and interstate, in constituting their institutions of higher learning." *United Carolina Bank v. Board of Re-*

*gents,* 665 F.2d 553, 557 (5th Cir.1982). However, given the great number of cases holding state universities to be instrumentalities of the state for Eleventh Amendment purposes, it would be an unusual state university that would not receive immunity. The analyses in these cases support our holding that Purdue is an instrumentality of the State of Indiana, enjoying its sovereign immunity.

### A

■ Courts have looked to a number of criteria in deciding this issue. The most important factor is the extent of the entity's financial autonomy from the state. "[A] crucial question in determining whether the suit should be regarded as one against the state is whether the named defendant has such independent status that a judgment against the defendant would not impact the state treasury." *Ronwin v. Shapiro,* 657 F.2d 1071, 1073 (9th Cir.1981); *accord Cannon v. University of Health Sciences/The Chicago Medical School,* 710 F.2d 351, 357 (7th Cir.1983). Courts consider the extent of state funding, the state's oversight and control of the university's fiscal affairs, the university's ability independently to raise funds, whether the state taxes the university, and whether a judgment against the university would result in the state increasing its appropriations to the university.

■ Purdue receives approximately one third of its income directly from the state. For example, in the academic year 1982–83, the university received slightly over 36% of its income from state appropriations. Other sources, with approximate percentages, were auxiliary enterprises (17%); student fees (16%); gifts, grants, and contracts (13%); sales and services (7%); student aid (4%); federal appropriations (3%); organized activities (2%); endowment income (.1%).

Indiana examines Purdue's finances carefully in deciding on the amount of appropriations. Indiana's Budget Agency Act, Ind. Code §§ 4–12–1–1 *et seq.,* expressly includes Purdue in the definition of "state

agency." The definition expressly excludes "cities, towns, townships, school cities, school towns, school townships, school districts, [and] other municipal corporations or political subdivisions of the state." As a "state agency," Purdue is required to prepare and file a detailed statement of all expenditures it made in the last budgetary period or expects to find necessary in the next budgetary period. The statement must show reasons for all expenditures, "showing particularly the reason for any requested increase or decrease over former appropriations." The Budget Agency is empowered to require the submission of additional information and to hold hearings. The Budget Agency analyzes the statement and submits its recommendations to the legislature. Thus, Purdue would have to report the payment of a judgment to the legislature as part of its financial report. *Cf. Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985) ("Where the budget of an entity [Troy State University] is submitted to the state for approval, this suggests that the entity is an agency of the state."). The state exercises further supervision of Purdue's finances through the Commission for Higher Education, which is empowered under Ind.Code § 20–12–0.5–8 to review appropriation requests and make recommendations to the governor, budget agency, and legislature.

■ Purdue has no power to levy taxes. So although Purdue has sources of revenue other than appropriations from the legislature, it lacks the ability that cities and counties typically have to require payments in the form of taxation. It can raise money only by entering into one of various markets: the market for bonds, for higher education, for services, and so forth. Paying a judgment in a case like the present is also not one of the purposes for which Purdue is authorized to issue bonds. The absence of the power to tax is a strong indication that an entity is more like an arm of the state than like a county or city, because that enablement gives an entity an important kind of independence. The absence of that authority, for an entity like

Purdue, ensures ultimate fiscal reliance upon the state. *Cf. Mackey v. Stanton*, 586 F.2d 1126, 1131 (7th Cir.1978), *cert. denied*, 444 U.S. 882, 100 S.Ct. 172, 62 L.Ed.2d 112 (1979) ("More important, both have the power to raise their own funds by tax levy and by bond issuance."); *United Carolina Bank v. Board of Regents*, 665 F.2d 553, 558 (5th Cir.1982) ("Most telling is the power of junior colleges to levy ad valorem taxes. . . . Under Texas law, political subdivisions are sometimes defined as entities authorized to levy taxes."); *Hall v. Medical College of Ohio at Toledo*, 742 F.2d 299, 304 (6th Cir.1984), *cert. denied*, 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985) ("[N]one of the state universities or colleges ... have power to levy taxes to service such bond issues or otherwise provide revenue independent of state appropriations.").

Indiana has exempted Purdue from taxation, a relief that some courts find indicative that an entity is an arm of the state rather than a subdivision. Indiana, however, extends that relief also to political subdivisions, so the factor has less force in this case.

If a judgment were awarded against Purdue, the state treasury would not write out a check to Kashani. But in view of the fact that Purdue is by design dependent on state appropriations, which are evidently carefully geared through close oversight to meet the changing financial needs of the university, it is apparent that the payment would directly affect the state treasury. Indiana has not created an entity with a separate financial basis; it has created one that is dependent upon and functionally integrated with the state treasury. Our examination of the extent of Purdue's fiscal autonomy, then, strongly indicates that Purdue is entitled to Eleventh Amendment immunity.

**B**

■ In determining whether Purdue is independent of the state, we must consider, beside Indiana's financial constraints on the university, the general legal status of

the university. "The answer depends, at least in part, upon the nature of the entity created by state law." *Mount Healthy School District v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977).

The issue cannot be resolved by simple reference to Indiana statutory definitions. Indiana statutory law relating to Purdue sometimes defines Purdue as a state agency, sometimes as a political subdivision. The Budget Agency Act, as noted above, expressly includes Purdue in the definition of "state agency," while expressly excluding from that definition municipalities, counties, and school districts. The Tort Claims statute, on the other hand, includes a "State college or university" in the definition of "Political subdivision" and excludes a "political subdivision" from the definition of "state agency." The Act, however, expressly provides "Nothing contained in this chapter shall be construed as a waiver of the eleventh amendment...." Other statutory definitions and references point in both directions, depending on the particular statutory purpose and framework. We must look to substance rather than form.

Very significant in considering whether Purdue has sufficient autonomy from the State of Indiana to be considered more like a county or city than like an arm of the state is the fact that the majority of the members of Purdue's governing council, the Board of Trustees, are selected by the Governor of Indiana. Indiana Statutes Ann. 20-12-37-2 (Burns 1985). *Cf. United Carolina Bank v. Board of Regents*, 665 F.2d 553, 558 (5th Cir.1982) ("Their governing bodies are elected by local voters rather than being appointed by the Governor with the advice and consent of the Senate."); *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir.), *cert. denied,* — U.S. ——, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985) ("Troy State University is subject to substantial state control; its Board of Trustees ... is composed in part of state officials and in part of gubernatorial appointees."). The Governor has the right to select seven of the ten Trustees; the Purdue Alumni Association selects the other three.[1] The Governor officially appoints all ten. The Trustees serve terms ranging from one to three years.

The Board has the right to regulate the use of university property and the conduct of persons on that property, to set fees and tuition, to discipline students and faculty, to prescribe admission standards, to establish curricula, to set academic standards, and to award financial aid. Ind.Code § 20-12-1-2. It would seem that the delegation of such powers is necessary to enable the university to function. The Trustees are also authorized to enter into contracts; to sue, be sued, settle lawsuits, and pay judgments; to exercise eminent domain; to engage in construction projects and own land. The various powers granted are an indication of independence. But that is undercut by the fact that the majority of the members of the Board itself are selected by the chief executive officer of the state and serve for a maximum of three years. Thus the independence is circumscribed. Moreover, the legislature expressly retained the power to amend or repeal the duties and powers of the Trustees. Ind.Code § 20-12-36-6. From that perspective, the functions granted the board appear less like the independent powers of a city or county than like the authority delegated to an instrumentality of the state to spare the legislature the need to ratify its every action. Also these powers are granted the university only so that it is able to carry out its primary purpose of education, in contrast to a city or county, whose exercise of such powers, in far more extensive form, is its very raison d'etre.

The Court in *Mount Healthy* looked not just to whether the entity was formed with independent powers from the state but also to whether it served the state as a whole or only a region. *Mount Healthy School District v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977) ("Petitioner

---

**1.** Of the seven Trustees selected by the Governor, under Ind.Stat. 20-12-37-4, one must be a woman, two must be "men of prominence and character in agricultural pursuits; two [2] shall be men chiefly engaged in manufacturing industries; and two [2] shall be citizens of character and distinction; one [1] must be a full time student of Purdue."

is but one of many local school boards within the State of Ohio."); *See also Mackey v. Stanton,* 586 F.2d 1126, 1131 (7th Cir.1978), *cert. denied,* 444 U.S. 882, 100 S.Ct. 172, 62 L.Ed.2d 112 (1979) (County departments of welfare "perform their duties on a local level."). Purdue educates students from all parts of the state. The local powers that it has are granted it to enable it to perform that function. Thus, we conclude as did the district court that the Eleventh Amendment shields Purdue.

### III

■ Although the Eleventh Amendment bars all claims against Purdue and the damages claims against its officials in their official capacities, it does not thwart the claims against the officials in their official capacities for the injunctive relief of reinstatement. Under the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a suit for prospective injunctive relief is not deemed a suit against the state and thus is not barred by the Eleventh Amendment. *Edelman v. Jordan,* 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974); *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979). We recently held that an injunction ordering reinstatement of a pharmacist "is clearly prospective in effect and thus falls outside the prohibitions of the Eleventh Amendment." *Elliott v. Hinds,* 786 F.2d 298, 302 (7th Cir.1986). The same result has been reached by the Sixth Circuit regarding reinstatement of a medical student, *Hall v. Medical College of Ohio at Toledo,* 742 F.2d 299, 307 (6th Cir.1984), *cert. denied,* 469 U.S. 1113, 105 S.Ct. 796, 83 L.Ed.2d 789 (1985), and by the Second Circuit regarding reinstatement of an employee to the payroll, *Dwyer v. Regan,* 777 F.2d 825, 836 (2nd Cir.1985). We must thus remand for consideration of the reinstatement claim based on Kashani's allegation that the defendant officials intentionally discriminated against him on the basis of his national origin.

### IV

For the foregoing reasons, the dismissal of Kashani's claims against Purdue University and the dismissal of the claims for damages against the defendant officials are AFFIRMED. The dismissal of the claims for injunctive relief against the officials in their official capacity is REVERSED and REMANDED for further proceedings consistent with this opinion.