**ROMCO, LTD., Plaintiff,**

v.

**OUTDOOR ALUMINUM, INC., Board of Regents of the University of Wisconsin System, and Commercial Union Insurance Co., Defendants.**

No. 89–C–469–C.

United States District Court,
W.D. Wisconsin.

Oct. 20, 1989.

Curtis Ward, Brooks, Ward & Trout, Marshalltown, Iowa, for plaintiff.

George W. Greene, Quale, Feldbruegge, Calvelli, Thom & Croke, S.C., Milwaukee, Wis., for defendants.

David E. Hoel, Asst. Atty. Gen., for Bd. of Regents of University of Wis.

## ORDER

CRABB, Chief Judge.

This civil diversity action for monetary relief is before the court on the motion of

---

defendant Board of Regents of the University of Wisconsin System to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

Defendant Board of Regents' motion is grounded on the contention that it is an arm of the state and therefore entitled to share in the state's Eleventh Amendment immunity. Plaintiff disagrees and argues that even if the board is an arm of the state for Eleventh Amendment purposes, the board waived its immunity and impliedly consented to suit in federal court when it entered into a contract with defendant Outdoor Aluminum, Inc. Alternatively, plaintiff contends that the Eleventh Amendment is not applicable because it seeks only injunctive relief.

I conclude that defendant Board of Regents is an arm of the state and entitled to Eleventh Amendment immunity. Furthermore, I conclude that defendant did not waive that immunity by entering into a contract with defendant Outdoor Aluminum. Finally, I conclude that even if plaintiff's claims against defendants could be characterized as injunctive, they are barred by the Eleventh Amendment because they arise under state law. Therefore, I will grant defendant Board of Regents' motion to dismiss.

In deciding a motion to dismiss, the court must take as true all of the well-pleaded allegations of the complaint and draw all reasonable inferences in favor of the plaintiff. *Mathers Fund, Inc. v. Colwell Co.*, 564 F.2d 780, 783 (7th Cir. 1977). The court may also take judicial notice of the sources of university funds. *Soglin v. Kauffman*, 295 F.Supp. 978, 988 (W.D.Wis.1968), *aff'd on other grounds*, 418 F.2d 163 (7th Cir.1969). Accordingly, I make the following findings of fact by assuming as true the allegations of the complaint and by taking judicial notice of facts in the 1988–89 University of Wisconsin System Budget Book, Vol. 1, exhibit II, p. 3.

## FACTS

*Allegations of Complaint*

Plaintiff is an Iowa corporation engaged in the business of erecting stadium seating.

Defendant Outdoor is an Alabama corporation engaged in the business of designing, manufacturing, and selling stadium seating. Defendant Board is a statutory body organized under the laws of the State of Wisconsin. Defendant Commercial Union Insurance Company is a corporation organized under the laws of the State of Massachusetts. It issued and executed a performance and payment bond for the contract that is the subject of this suit.

Defendant Board of Regents is comprised of seventeen individuals. Fifteen of the seventeen are appointed by the governor with the advice and consent of the state senate. Wis.Stat. § 15.07(1), 15.91 (1987).

Defendant Board of Regents has the primary responsibility for the governance of the state university system. *Id.* § 36.09.

On April 27, 1988, defendant Board of Regents accepted defendant Outdoor Aluminum's bid for the Camp Randall Memorial Stadium Structural Modifications contract. Defendant Outdoor Aluminum selected plaintiff as the subcontractor to install replacement seating at the stadium, and agreed to pay plaintiff thirty-five thousand dollars for the work.

Plaintiff performed all of the work required of it under the subcontract. It incurred approximately fifteen thousand dollars in additional expenses as a result of defendant Outdoor Aluminum's breach of the subcontract. It has received from defendant Outdoor Aluminum thirty thousand dollars of the subcontract price, but has not been compensated for its additional expense and is owed approximately twenty thousand dollars for its work at the stadium.

The general contract required plaintiff to obtain certification from the Architect/Engineer following its performance of the subcontract and to present this certification to defendant Board. Defendant Board of Regents was to pay defendant Outdoor Aluminum for plaintiff's work, less ten percent to be retained until final completion and acceptance of all work covered by the general contract.

Defendant Outdoor Aluminum has failed to obtain the necessary certifications for payment from defendant Board of Regents. Also, it has failed to obtain approval of the work so that final payment could be made to it by defendant Board of Regents and by defendant Outdoor Aluminum to plaintiff. Consequently, defendant Board of Regents has withheld funds due defendant Outdoor Aluminum from which the claims of plaintiff could be paid.

*Facts Subject to Judicial Notice*

The University of Wisconsin System receives approximately one-third of its income directly from the state. For example, in the 1988–89 academic year, the university system received slightly over 37 percent of its income from state appropriations. Other sources, with approximate percentages, were student fee income (15%); federal program aid projects (15%); auxiliary enterprises (15%); university hospital revenue (9%); gifts and trust fund income (6%); operations receipts (4%).

The treasurer of defendant Board of Regents is the treasurer of the State of Wisconsin. Wis.Stat. § 36.07(3) (1987). Defendant Board of Regents must submit its budget to the Wisconsin Department of Administration for incorporation into the state budget. *Id.* § 16.42 *et seq.* (1987). The board's budget must include detailed information concerning the proposed use of the requested funds, as well as any other information required by the governor or the Secretary of the Department of Administration. *Id.* § 16.42. As a result of this arrangement, the budget of defendant Board of Regents is subject to legislative control through the budget process. *Id.* § 20.285. Also, the Secretary of Administration exercises continuous oversight and control over the University of Wisconsin System's fiscal affairs under Wis.Stat. § 16.50.

Defendant Board of Regents has no power to levy taxes or issue bonds to finance its operations.

OPINION

Defendant Board of Regents' motion to dismiss for lack of subject matter jurisdiction presents three issues: whether defendant is entitled to share in the State of Wisconsin's Eleventh Amendment immunity and, if so, whether it waived that immunity when it entered into a contract with defendant Outdoor Aluminum and whether plaintiff's claim that it seeks injunctive relief defeats defendant's claim to immunity.

I. Entitlement to Eleventh Amendment Immunity

■ The Eleventh Amendment provides: The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State. It is well established that the Eleventh Amendment will bar an action that is in essence one for the recovery of money from the state, even if the state is not a named party to the action. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1973); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). In examining a suit against a state university, a federal court must determine whether the action is essentially one for the recovery of money from the state and focus on the extent of the university's financial autonomy from the state, as well as the university's general legal status. *Kashani v. Purdue,* 813 F.2d 843, 845, 846 (7th Cir.1987), *cert. denied,* 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987). *See also Cannon v. University of Health Sciences/The Chicago Medical School,* 710 F.2d 351, 357 (7th Cir.1983); *Ranyard v. Board of Regents,* 708 F.2d 1235, 1238 (7th Cir.1983). The majority of courts have found state universities to be instrumentalities of the state and therefore protected by the Eleventh Amendment. *See, e.g., Kashani,* 813 F.2d at 845 (and cases cited therein). However, courts must decide each case on its own facts because states have adopted different schemes in organizing their institutions of higher learning. *Id.* at 845, quoting *United Carolina Bank v. Board of Regents,* 665 F.2d 553, 557 (5th Cir.1982).

In *Kashani*, the court identified factors to consider when analyzing the extent of a state university's financial autonomy: the extent of state funding, the state's oversight and control of the university's fiscal affairs, the university's ability to raise funds independently, whether the state taxes the university, and whether a judgment against the university would result in an increase in state appropriations to the university. *Id.* at 845. After reviewing these factors, the Court of Appeals for the Seventh Circuit affirmed the district court's finding that Purdue University was dependent on state appropriations. *Id.* at 846. Consequently, any judgment rendered against Purdue would have an impact on the state treasury, although payment would not come directly from the treasury. *Id.* at 846. The court agreed that the university's funding arrangement "strongly indicates that Purdue is entitled to Eleventh Amendment immunity." *Id.* at 846. An analysis of the extent of the University of Wisconsin System's financial autonomy compels the same conclusion.

It is obvious from the facts of which I have taken judicial notice that the State of Wisconsin exercises considerable oversight and control over the University of Wisconsin System's fiscal affairs.

Plaintiff argues that because count II of the complaint seeks only those funds that are already allocated for the payment of the contract, judgment against defendant Board of Regents would not have an impact on the state treasury. I find this argument unpersuasive. Although these funds have been allocated, they remain tied to the state treasury because they are subject to the state's continuing oversight and control of the university's fiscal affairs. The University of Wisconsin System is designed to be dependent on state appropriations. Through the budget process, the state tailors these appropriations to the specific needs of the university system. Future appropriations will take into account any funds remaining in the board's hands. The state's continuing financial obligation to the university system and its control over the system's fiscal affairs indicate that the funds allocated for the contract are essentially state funds. Consequently, any judgment against defendant Board of Regents would have a direct impact on the state treasury even though the state would not write out the check.

The general legal status of defendant Board of Regents is also relevant to the analysis whether it is an arm of the state and therefore protected by the Eleventh Amendment. In *Kashani*, the court stated that:

> Very significant in considering whether Purdue has sufficient autonomy from the State of Indiana to be considered more like a county or city than like an arm of the state is the fact that the majority of the members of Purdue's governing council, the Board of Trustees, are [sic] selected by the Governor of Indiana.

813 F.2d at 847.

The state legislature has granted defendant Board of Regents various powers to conduct the university system's affairs. Although these powers provide the board with a degree of independence, they do not provide it with significant autonomy from the state.

The extent of the board's powers and duties are defined by Chapter 36 of the Wisconsin Statutes. The state delegates these powers to defendant Board of Regents so that it can fulfill its legislatively defined role as the head of the state university system. Consequently, the board's powers "appear less like the independent powers of a city or county than like the authority delegated to an instrumentality of the state to spare the legislature the need to ratify its every action." *Kashani*, 813 F.2d at 847.

## II. Waiver of Entitlement to Eleventh Amendment Immunity

Plaintiff argues that even if defendant Board of Regents is protected by the Eleventh Amendment, it waived that immunity and consented to suit in federal court by entering into a contract with defendant Outdoor Aluminum. Plaintiff argues that it is an anomaly that the Board of Regents should not be bound by the terms of the

contracts it enters into when the parties with whom it contracts are bound by those terms. As plaintiff points out in its brief, some state courts have responded to this anomaly by holding that a state waives its sovereign immunity from suit in state court by contracting with a private party. However, plaintiff cites no federal case law to support the proposition that a state consents to suit in *federal* court by contracting with a private party. Indeed, such an argument would be at odds with relevant Eleventh Amendment authority.

The states ratified the Eleventh Amendment in response to the Court's decision in *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440. In *Chisholm*, the Supreme Court exercised original jurisdiction over a state law breach of contract claim brought by a citizen of South Carolina against the State of Georgia. Jurisdiction was based on the state-citizen diversity clause of Art. III of the Constitution. The Court's exercise of jurisdiction over that suit " 'created such a shock of surprise that the Eleventh Amendment was at once proposed and adopted.' " *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 97, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1983), quoting *Monaco v. Mississippi*, 292 U.S. 313, 325, 54 S.Ct. 745, 749, 78 L.Ed. 1282 (1934). Although the precise scope of the immunity granted by the Eleventh Amendment is subject to continuing debate, *see Atascadero v. Scanlon*, 473 U.S. 234, 258, 105 S.Ct. 3142, 3155, 87 L.Ed.2d 171 (Brennan, J., dissenting) (arguing that the Eleventh Amendment was intended to bar federal state-citizen and state-alien diversity jurisdiction but not federal question and admiralty jurisdiction), it is clear that, at the very least, the amendment was adopted to preclude federal courts from exercising diversity jurisdiction over a state law claim against a state, such as the one plaintiff presents here.

■ A state may waive its Eleventh Amendment immunity and thereby consent to suit in federal court. Plaintiff argues that the state has done so constructively by entering into a contract with a private party. However, as the Court stated in *Edel-*

*man v. Jordan*, 415 U.S. at 673, 94 S.Ct. at 1360, "[c]onstructive consent is not a doctrine commonly associated with the surrender of constitutional rights.... Therefore, we have required an unequivocal expression of a state's consent to be sued in federal court." *See id.* (holding state did not constructively consent to suit by participating in federally funded program and agreeing to administer federal funds in compliance with federal law); *Atascadero*, 473 U.S. at 234, 105 S.Ct. at 3143 (holding state's general waiver of sovereign immunity did not constitute waiver of Eleventh Amendment immunity).

Although the Court of Appeals for the Seventh Circuit has never addressed the question whether this unequivocal expression of a state's consent to suit in federal court can be supplied by the act of entering into a contract with a private party, in *Wallace v. State of Oklahoma*, 721 F.2d 301, 305 (10th Cir.1983), the Court of Appeals for the Tenth Circuit held that more is required for a waiver of a state's Eleventh Amendment immunity than merely entering into a contract with a private party. This result is congruent with other Eleventh Amendment cases.

### III. Application of Eleventh Amendment to Claims for Injunctive Relief

■ Plaintiff contends that Count II of the complaint seeks only to enjoin defendant Board of Regents from paying the remaining funds to defendant Outdoor Aluminum until satisfactory evidence is furnished that defendant Outdoor Aluminum has fully discharged its liability to plaintiff. Plaintiff relies on *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) to support the proposition that suits seeking injunctive relief from the state are not barred by the Eleventh Amendment. However, the Supreme Court's holding in *Pennhurst* limits the application of *Young* to suits seeking to vindicate federal rights. *Pennhurst*, 465 U.S. at 106, 104 S.Ct. at 911. In *Pennhurst*, the Court made it clear that federal courts are not to intervene in matters that should be left to state court jurisdiction.

Therefore, even if I were to accept plaintiff's characterization of the action, I would not exercise jurisdiction over the suit.

## ORDER

IT IS ORDERED that the motion of the defendant Board of Regents of the University of Wisconsin System to dismiss this complaint against it for lack of subject matter jurisdiction is GRANTED.