50 F.3d 481
 67 Fair Empl.Prac.Cas. (BNA) 521,
66 Empl. Prac. Dec. P 43,502
Steve STONER, Plaintiff-Appellant,
v.
WISCONSIN DEPARTMENT OF AGRICULTURE, TRADE AND CONSUMER
PROTECTION, Elizabeth Kohl and Steve Steinhoff,
Defendants-Appellees.
 No. 94-3367.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 21, 1995.
Decided March 23, 1995.
 
 Robert J. Gingras (argued), Paul A. Kinne, Madison, WI, for plaintiff-appellant.
 Richard Briles Moriarty (argued), Wis. Dept. of Justice, Madison, WI, for defendants-appellees.
 Before POSNER, CUMMINGS and KANNE, Circuit Judges.
 CUMMINGS, Circuit Judge.
 
 
 1
 Steve Stoner, an employee of the Wisconsin Department of Agriculture, Trade and Consumer Protection (the "Department"), challenged his employer's decision to hire a woman for one of two positions to which he had applied instead of offering him a choice of either position. Stoner brought a reverse sex discrimination suit under 42 U.S.C. Sec. 1983 and the Fourteenth Amendment against the Department and two employees involved in the hiring decision, Department deputy secretary Elizabeth Kohl and Division of Food Safety administrator Steve Steinhoff, in their official and individual capacities. The district court held that sovereign immunity insulated the Department and protected its personnel in their official capacities from damages suits, and granted summary judgment on the remaining claim against Kohl and Steinhoff in their individual capacities.
 
 I. Sovereign immunity
 
 2
 Initially, we uphold the district court's dismissal of the suit against the Department and the damages action against Kohl and Steinhoff in their official capacities. Case law in this Circuit has rejected the notion, advanced by Stoner, that a state which chooses to indemnify its employees for damages threatens its Eleventh Amendment immunity from suit. See Duckworth v. Franzen, 780 F.2d 645, 650-51 (7th Cir.1985), certiorari denied, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28. In Duckworth, defendant state officials attempted to characterize a suit against them in their individual capacity as against the state, relying on an Illinois state law that mandated indemnification of state employees for acts committed in the course of employment. This Court noted that "it would be absurd if all a state had to do to put its employees beyond the reach of section 1983 and thereby make the statute ineffectual ... was to promise to indemnify state employees for any damages awarded in such a suit." Id. at 651. It would be equally absurd if such indemnification statutes served automatically to abrogate Eleventh Amendment immunity by allowing states to be joined as indemnitors. Untenable also; this argument fails.
 
 
 3
 Without the indemnity argument, of course, Stoner's attempt to join the Department or its officials disintegrates. He cannot sue an arm of the state of Wisconsin, which has not waived sovereign immunity. Alabama v. Pugh, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); Romco, Ltd. v. Outdoor Aluminum, Inc., 725 F.Supp. 1033, 1037 (W.D.Wis.1989). And he cannot sue defendants Kohl and Steinhoff for damages in their official capacities, because "a suit against an official in his official rather than individual capacity is a suit against the state." Duckworth, 780 F.2d at 649. He can sue Kohl and Steinhoff as individuals, but to survive summary judgment on the merits and obtain a damages remedy he will have to demonstrate individual wrongdoing on their part. Id. at 650.
 
 II. Summary judgment
 
 4
 The facts of this case reveal that Stoner has not made out a prima facie case of sex discrimination--which does after all require that the complainant be the victim of discrimination--against either Kohl or Steinhoff. Stoner, at the time a Food Inspector within the Department, learned of two Agricultural Supervisor vacancies in late 1991. The positions, one in the Green Bay area and the other in Altoona, near Eau Claire, were essentially identical in terms of pay, responsibilities and civil service classification, and Stoner applied for both. Accordingly he was invited to a one-hour interview with the regional managers for Green Bay and Eau Claire on December 19, 1991 (Pl.App. 13). He performed well; so did a female applicant, Carrie Coenen, who was interested only in the Altoona position, and another male applicant, Larry Hanke, who would consider only the Green Bay job. All other candidates lagged far behind these three. After considering their options, Steinhoff, who supervised both regions, and Kohl, to whom Steinhoff reported, decided to offer Hanke, their top candidate, the Green Bay job. When Hanke rejected the position, Steinhoff (with Kohl's approval) offered Altoona to Coenen and Green Bay to Stoner, apparently hoping to fill both vacancies without resorting to a second search for candidates.
 
 
 5
 Thus the hiring process resulted in Stoner, a qualified individual, being offered a job for which he had applied. End of story, and a happy one at that--except that Stoner no longer wanted the Green Bay job. He wanted the Altoona position, and when it went to Coenen, a woman whom he felt was less qualified, he cried foul.
 
 
 6
 Despite Stoner's insistence to the contrary, the scenario we have just described is not sex discrimination of any stripe. A valid claim of sex discrimination must set forth membership in a protected class and differential treatment from similarly situated members of the unprotected class. McNabola v. Chicago Transit Authority, 10 F.3d 501, 513 (7th Cir.1993). The plaintiff must also show that defendants acted with discriminatory intent in making their decision. New Burnham Prairie Homes v. Village of Burnham, 910 F.2d 1474, 1481 (7th Cir.1990). Stoner's selection for the Green Bay job while the Altoona offer went to Coenen, irksome as it may have appeared to him, does not entail the intentional differential treatment of individuals based on their sex. It does not entail differential treatment, period. Stoner and Coenen were treated identically insofar as they were similarly situated: each was identified as a qualified candidate and then assigned for prospective promotion to a particular job based on the Department's hiring needs. To the extent that the two candidates were treated differently, with Coenen given her first choice of a promotion while Stoner was offered only his second choice, this is a result of their not being similarly situated: Coenen applied for just one job, and Stoner applied for two. Having for whatever personal reasons chosen to apply for the Green Bay position, Stoner should not now be heard to complain because he got it.
 
 
 7
 It is axiomatic that on reviewing the district court's grant of summary judgment, this Court draws all reasonable inferences from the record in the light most favorable to the non-movant, and will uphold a summary judgment unless there is a genuine issue as to any material fact. Donovan v. City of Milwaukee, 17 F.3d 944, 947 (7th Cir.1994). The non-movant's ability to point to disputed facts, however, will not avail him if these facts are irrelevant to judgment as a matter of law. Therefore, despite plaintiff's allegations regarding defendants' improper motive and his own stellar qualifications, and defendants' response reassuring us of the purity of their intentions and the worthiness of candidate Coenen, further examination of the candidates' resumes or of the inner workings of the Department's hiring process would not be fruitful. Stoner's treatment at the hands of his employers did not raise a prima facie case of discrimination, and the judgment of the district court is affirmed.