

FILED

Oct 26 2015, 8:49 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Robert Owen Vegeler | William P. Kealey |
| Vegeler Law Office LLC | Stuart & Branigin LLP |
| Fort Wayne, Indiana | Lafayette, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Adam Gaff, | October 26, 2015 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 02A03-1504-PL-136 |
| v. | Appeal from the Allen Superior Court |
| Indiana-Purdue University of Fort Wayne, | The Honorable Craig J. Bobay, Judge |
| *Appellee-Defendant.* | Trial Court Cause No. 02D02-1310-PL-378 |

**Najam, Judge.**

## Statement of the Case

[1] Adam Gaff appeals the trial court's grant of Indiana University-Purdue University of Fort Wayne's ("IPFW's") motion for summary judgment. Gaff raises four issues on appeal, which we consolidate and restate as the following three issues:

1. Whether the trial court erred when it concluded that Gaff's federal constitutional claims were not permissible under 42 U.S.C. § 1983;

2. Whether the trial court erred when it concluded that Gaff's state constitutional claims failed as a matter of law; and

3. Whether the trial court erred when it granted Purdue's motion for summary judgment on Gaff's Title VII retaliation claim.

We affirm.

## Facts and Procedural History

Gaff worked as a "Lead Custodian IV" at IPFW from September 23, 2002, until December 7, 2012. Appellant's App. at 82. On July 16, 2012, Zachery Itt began his employment with Purdue as a "Custodian II" on the campus and reported to Gaff. *Id*. at 84. On July 19, 2012, Itt filed a report against Gaff for "getting in his face" and making "threatening gestures" and for accusing Itt of taking drugs. Appellant's App. at 84. In a separate report filed by Itt on the same date, Itt alleged that Gaff had made disrespectful remarks about Gaff's supervisor, Ed High. Gaff subsequently submitted to High documents disputing Itt's allegations of July 19. On July 19, High assigned Itt to a different lead custodian with the intent to limit interactions between Itt and Gaff.

Sometime after Itt was hired by IPFW, Gaff orally complained to High that, on "several occasions" Itt had called Gaff a "fat a\*\*" and a "fa\*\*\*t." *Id*. at 85.

Thereafter, on July 26, 2012, Gaff received an oral reprimand from High for failing to perform floor maintenance on three separate occasions.

[4] On November 28, 2012, Gaff and Itt were involved in a confrontation that was recorded by IPFW's surveillance equipment. That confrontation took place in the hallway of the Student Union while Gaff and Itt were both on duty. During the confrontation, Gaff approached Itt, "confronted Itt," and Gaff's "person made contact with Itt's person." *Id.* at 86-87.

[5] Gaff reported the November 28 incident to his supervisor and campus police. Purdue's[1] Human Resources Department conducted an investigation of the November 28 confrontation to determine whether its "Violent Behavior Policy" had been violated. *Id.* Purdue's Violent Behavior Policy states, in pertinent part, that "Violent Behavior is prohibited in or on any University Facility," and "employees who violate this policy will be subject to disciplinary action up to and including termination." *Id.* In the course of its investigation, Purdue Human Resources reviewed the surveillance footage of the November 28 confrontation and both Gaff's and Itt's reports regarding the confrontation. Upon completion of its investigation, Purdue determined that Gaff's actions in

---

[1] IPFW is jointly owned by Indiana University and Purdue University, and it is managed by Purdue pursuant to an agreement of the universities. Appellant's App. at 83.

the November 28 confrontation violated its Violent Behavior Policy, and it terminated Gaff's employment effective December 7, 2012.[2]

[6] On December 11, 2012, pursuant to Purdue's Grievance Policy, Gaff submitted to his department head, H. Jay Harris, a written grievance for wrongful termination, and he requested reinstatement. As required under the grievance procedure, Harris met with Gaff and allowed him to tell his side of the story and present evidence related to his grievance. Harris subsequently notified Gaff in writing that Harris was upholding Purdue's decision to terminate him.

[7] Thereafter, Gaff proceeded with Step Two of Purdue's Grievance Policy by submitting his grievance to Human Resources. The Step Two procedures were followed and resulted in a Grievance Review Committee hearing on January 31, 2013, at which Gaff was afforded an opportunity to present his side of the story to the Committee. The Committee found that Gaff had engaged in behavior that violated the Violent Behavior Policy and recommended that Gaff's termination be upheld. On February 15, 2013, and as the final step in the review of Gaff's grievance, IPFW Chancellor Vicky Carwein informed Gaff in writing of her decision to accept the Grievance Review Committee's recommendation and uphold the termination.

---

[2] According to the Affidavit of Rose Costello, Director of Purdue Human Resources, Itt's behavior in the November 28 confrontation was also found to have violated Purdue's Violent Behavior Policy, and his employment was also terminated on December 7, 2012. Appellee's App. at 102.

[8] On May 1, 2013, Gaff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and he received a Notice of Right to Sue from the EEOC on August 28, 2013. On November 15, 2013, Gaff filed in court his complaint against IPFW in which he sought "compensatory damages, reasonable attorneys' fees and all other proper relief" for his claims of (1) "gender discrimination, sexual orientation discrimination, retaliation and denial of due process and equal protection rights under the Fourteenth Amendment to the United States Constitution and the Indiana Constitution," (2) gender and sexual orientation discrimination in violation of Title VII of the Civil Rights Act of 1964, and (3) retaliation under Title VII. Appellee's App. at 162-164. Regarding retaliation, "[s]pecifically, Gaff claims that his supervisor, Ed High, retaliated against him due to Itt's reports to Purdue Human Resources about Gaff's behavior toward Itt." Appellant's App. at 93.

[9] On September 29, 2014, IPFW filed a motion for summary judgment, and, following a hearing, the trial court granted IPFW's motion, in part, on Gaff's claims of discrimination based on sexual orientation and hostile work environment.[3] Thereafter, the parties provided the court with supplemental briefing and an Agreed Statement of Material Facts, and the court issued its

---

[3] Although the trial court and the parties refer to a "hostile work environment" claim, Gaff raised no such allegation in his complaint, and this claim does not otherwise appear in the record. Regardless, Gaff does not raise such a claim on appeal.

Order Granting Summary Judgment to IPFW on all of Gaff's remaining claims on March 24, 2015. This appeal ensued.

## Discussion and Decision

Gaff appeals the trial court's grant of summary judgment to IPFW. Our standard of review is clear:

> When a trial court's ruling granting or denying summary judgment is challenged on appeal, our standard of review is the same as it is for the trial court. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 4 (Ind. 2010). The moving party "bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Gill v. Evansville Sheet Metal Works, Inc.*, 970 N.E.2d 633, 637 (Ind. 2012). Summary judgment is improper if the moving party fails to carry its burden, but if it succeeds, then the non-moving party must come forward with evidence establishing the existence of a genuine issue of material fact. *Id.* We construe all factual inferences in favor of the non-moving party and resolve all doubts as to the existence of a material issue against the moving party. *Plonski*, 930 N.E.2d at 5. An appellate court reviewing a challenged trial court summary judgment ruling is limited to the designated evidence before the trial court, *see* Ind. Trial Rule 56(H), but is constrained to neither the claims and arguments presented at trial nor the rationale of the trial court ruling. *See Woodruff v. Ind. Family & Soc. Servs. Admin.*, 964 N.E.2d 784, 790 (Ind. 2012) ("We will reverse if the law has been incorrectly applied to the facts. Otherwise, we will affirm a grant of summary judgment upon any theory supported by evidence in the record") . . . ; *Wagner v. Yates*, 912 N.E.2d 805, 811 (Ind. 2009) ("[W]e are not limited to reviewing the trial court's reasons for granting or denying summary judgment but rather we may affirm a grant of summary judgment upon any theory supported by the evidence.").

*Whitfield v. Wren*, 14 N.E.3d 792, 796-97 (Ind. Ct. App. 2014).

Here, in its summary judgment order, the trial court made findings and conclusions. However, "[i]n the summary judgment context, we are not bound by the trial court's specific findings of fact and conclusions [thereon]. They merely aid our review by providing us with a statement of reasons for the trial court's actions." *Id.* at 797 (internal citations omitted).

### Issue One: Gaff's federal constitutional claims

Gaff's claims against IPFW alleged a denial of equal protection and due process under the Fourteenth Amendment to the United States Constitution.[4] As remedy for these alleged constitutional violations, Gaff sought money damages and attorney's fees and alleged that IPFW is not entitled to sovereign immunity from these claims. Gaff is mistaken as it is clear that his federal constitutional claims are barred by the Eleventh Amendment to the United States Constitution.

Under the Eleventh Amendment, a state may not be sued under federal law in either federal or state court without the state's consent or Congress' legitimate abrogation of the state's sovereign immunity. *See, e.g.*, *Montgomery v. Bd. of Trustees of Purdue Univ.*, 849 N.E.2d 1120, 1124 (Ind. 2006). IPFW is jointly

---

[4] Of course, the federal constitution does not, itself, provide a cause of action against a state actor; rather, such claims must be brought pursuant to 42 U.S.C. § 1983. *See, e.g.*, *Foster v. Michigan*, 573 Fed. App'x. 377, 391 (6th Cir. 2014) ("[W]e have long held that § 1983 provides the exclusive remedy for [federal] constitutional violations."). Although Gaff did not cite to 42 U.S.C. § 1983 in his complaint, the trial court assumed his federal constitutional claims were brought under § 1983.

owned by Indiana University and Purdue University, both of which are "arms of the state." *Kashani v. Purdue Univ.*, 813 F.2d 843, 848 (7th Cir. 1987); *Shannon v. Bepko*, 684 F. Supp. 1465, 1469-70 (S.D. Ind. 1988). Therefore, IPFW, as a jointly-owned regional campus of Indiana University and Purdue University, is entitled to sovereign immunity under the Eleventh Amendment. *Kashani*, 813 F.2d at 848; *Shannon*, 684 F.Supp. at 1469-70. Indiana has not consented to be sued for damages for federal constitutional violations, *see* Ind. Code §§ 34-13-4-1 to -4, and 42 U.S.C. § 1983 has not abrogated states' sovereign immunity from such claims. *See, e.g., Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) (citing *Quern v. Jordan*, 440 U.S. 332, 345 (1979)). Therefore, IPFW cannot be sued in state court for federal constitutional violations. *See, e.g.*, *Ross v. Indiana State Bd. of Nursing*, 790 N.E.2d 110, 117 (Ind. Ct. App. 2003).[5]

[14] Here, Gaff sued IPFW as an entity for alleged federal constitutional violations; therefore, his federal equal protection and due process claims are barred by the Eleventh Amendment.

---

[5] A person may sue state officials in their official capacities for injunctive relief for federal constitutional violations. *Kashani*, 813 F.2d at 848 (citing *Ex parte Young*, 209 U.S. 123 (1908)); *see also Tyler v. Trustees of Purdue Univ.*, 834 F. Supp. 2d 830, 845 (N.D. Ind. 2011) (holding that, although Purdue is immune from suit, individual state officials may be sued under § 1983 in their official capacities for prospective injunctive relief such as reinstatement). However, Gaff sued only IPFW, not its officials in their official capacities, and he did not request injunctive relief.

### Issue Two: Gaff's state constitutional claims

[15] Gaff also alleges that IPFW has violated the due course of law provision of Article 1, Section 12 of the Indiana Constitution ("All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law . . . ") and the equal privileges and immunities clause of Article 1, Section 23 of the Indiana Constitution ("The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens."). However, again, he has requested only money damages; he has not pursued any type of declaratory or injunctive relief.[6] As we held in *Smith v. Indiana Department of Correction*, 871 N.E.2d 975, 986 (Ind. Ct. App. 2007), *trans. denied,* there is "no express or implied right of action for monetary damages under the Indiana Constitution." *See also*, *City of Indianapolis v. Cox*, 20 N.E.3d 201, 212 (Ind. Ct. App. 2014) (holding there was no private right of action for monetary damages for an alleged violation of Article 1, Section 23 of the Indiana Constitution), *trans. denied*. Thus, while Gaff claims that IPFW's grievance procedures were fundamentally flawed and that IPFW singled him out for discriminatory treatment, he has failed to state a claim under state

---

[6] Nor will we assume from his request for "all other proper relief" in his complaint that we may grant him injunctive relief, such as reinstatement, when he has never requested such relief at any stage of the trial court proceedings or in this appeal.

constitutional law. The trial court did not err when it granted IPFW's summary judgment motion on Gaff's state constitutional claims.

### Issue Three: Gaff's Title VII retaliation claim

Gaff's final claim is that IPFW violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a),[7] by firing him in retaliation for his exercise of statutorily protected activities. Title VII forbids an employer from retaliating against an employee "because he has opposed any practice made an unlawful employment practice by this subchapter . . . " 42 U.S.C. § 2000e-3(a). An unlawful employment practice is defined at 42 U.S.C. § 2000e-2 as employer discrimination against an employee based on the employee's "race, color, religion, sex, or national origin . . . ." The purpose of the anti-retaliation provision is to "prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms . . . by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Porter v. City of Chicago*, 700 F.3d 944, 956 (7th Cir. 2012) (internal citations omitted).

Indiana's courts apply the federal standard for burdens of proof and order of presentation in Title VII cases. *Indiana Civil Rights Comm'n v. Culver Educ. Found.*, 535 N.E.2d 112, 115-16 (Ind. 1989); *see also Fuller v. Allison Gas Turbine*

---

[7] IPFW is not immune from Gaff's Title VII claim as Congress, pursuant to its enforcement power granted under § 5 of the Fourteenth Amendment, has expressly abrogated the states' sovereign immunity under Title VII. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Thus, monetary damages and attorney's fees can be awarded against a state in a successful Title VII claim. *Id.* at 457.

*Div.*, 670 N.E.2d 64, 68 (Ind. Ct. App. 1996) ("In analyzing claims of retaliation, we apply the three-stage test originally formulated to resolve actions brought under Title [VII] of the Civil Rights Act."). Under that federal standard, the complainant must carry the initial burden under Title VII of establishing a prima facie case of discrimination.[8] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Thus, although IPFW is the party who moved for summary judgment, the initial burden is still on Gaff to prove a prima facie case of retaliation.[9] *See, e.g.*, *Elliott v. Sterling Mgmt. Ltd.*, 744 N.E.2d 560, 563 (Ind. Ct. App. 2001) (applying federal law regarding Title VII burdens of proof to hold the trial court did not err in granting the employer summary judgment). As explained below, however, Gaff has failed to carry that burden.

[18] In establishing a prima facie case of discrimination under Title VII, the complainant may prove his case through either the direct or indirect[10] method of

---

[8] If the employee establishes a prima facie case, the burden shifts to the employer to articulate legitimate, non-discriminatory reasons for the termination. *Culver*, 535 N.E.2d at 115-116. And if the employer carries that burden, the burden of proof then shifts back to the employee to show the reason given by the employer was pretext. *Id*.

[9] Thus, Indiana's "heightened" summary judgment standard, discussed in *Hughley v. State*, 15 N.E.2d 1000, 1003 (Ind. 2014), under which the moving party must negate an opponent's claim, does not apply to a Title VII claim. *Culver*, 535 N.E.2d at 115.

[10] To prove retaliation under the "indirect method" a claimant must make an initial showing that "(1) he engaged in a statutorily protected activity; (2) he met the employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006) (internal quotation marks and citations omitted). However, Gaff admitted that "there were no other similarly situated Defendant's employees who were treated differently by Defendant." Appellant's App. at 93. And, in any case, he does not claim to meet the burden of proof under the indirect method.

proof. *Porter*, 700 F.3d at 957. Gaff has attempted to prove his retaliation claim under the direct method of proof.

> To survive summary judgment on a Title VII retaliation claim under the direct method of proof, a plaintiff must submit evidence from which a jury could reasonably conclude that (1) he engaged in statutorily protected activity; (2) he suffered a material adverse action; and (3) a causal link between the two.

*Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014). All three of these factors must be shown, and the claimant must show "but-for" causation, not a lesser "motivating factor" standard of causation. *Id.* A claimant can also meet his burden under the "direct method" by providing sufficient circumstantial evidence of retaliation, such as evidence of suspicious timing, the employer's different treatment of similarly situated employees, a pretextual reason for the adverse employment action, or statistics, *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 869 (7th Cir. 2013), or by establishing a discriminatory motive on the part of the employer through a longer chain of inferences, i.e., "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Davis v. Time Warner Cable*, 651 F.3d 664, 672 (7th Cir. 2011).

[19] Gaff has failed to carry his burden of establishing a prima facie case of retaliation because he did not show that he met factor one; namely, he has

failed to show that he engaged in a statutorily protected activity.[11]  To meet his burden, Gaff had to demonstrate that he "opposed an unlawful employment practice" by, for example, filing a prior complaint about unlawful discrimination under Title VII, i.e., discrimination on the basis of race, color, religion, sex, or national origin.  *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663-64 (7th Cir. 2006).  "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Id.* (internal citations omitted).  Yet, that is all Gaff has shown.

[20]  According to Gaff, IPFW terminated him in retaliation for:  (1) the November 28, 2012, confrontation he had with Itt; (2) Itt's July 2012 reports against Gaff; and (3) the July 2012 oral reports Gaff made about Itt's derogatory remarks to Gaff.  However, none of those actions involve a statutorily protected activity.  Obviously, Gaff's November 28 confrontation with Itt was not a protected activity but just the opposite as Purdue and IPFW found it was a violation of Purdue's Violent Behavior Policy.  Nor do Itt's July 2012 reports support Gaff's retaliation claim.  Those reports were not *Gaff's* activity and therefore are irrelevant to the retaliation analysis.[12]  And, finally, Gaff's July 2012 oral reports to his supervisor regarding Itt's derogatory comments did not involve

---

[11]  It is not necessary to address factors two and three since there is no statutorily protected activity that could be causally linked to a material adverse action, i.e., Gaff's termination.

[12]  Moreover, Itt's reports did not relate to alleged discrimination or any other statutorily protected activity.

discrimination against a protected class. That is, Gaff was not complaining about derogatory comments related to his race, color, religion, sex, or national origin; rather, he complained that Itt made derogatory comments about his weight and sexual orientation, neither of which involve protected classes under Title VII.

Moreover, Gaff has failed to provide any circumstantial evidence that his July 2012 reports related to complaints of discrimination on the basis of sex, which is a statutorily protected class. Gaff claims he "reported a number of previous confrontational, harassment incidents where Itt initiated disparaging comments about Gaff including his sex, apparent sexual orientation[,] and disparaging weight slurs." Appellant's Br. at 30. However, the evidence Gaff designates does not support his claim relating to sex: paragraph four of his affidavit only states that Gaff made "harassment complaints," and at pages 43-44 of his deposition, Gaff said only that he reported to his supervisor that Itt called him a "f***in' fa***t." Appellant's App. at 98. The only allegation Gaff made regarding comments supposedly based on his sex was his allegation in his complaint that someone said *during the grievance process* that his "large size was very intimidating." Appellee's App. at 163.[13] However, this was not a comment about which he filed a complaint prior to the adverse action taken

---

[13] It is not clear how this statement relates to Gaff's sex (male). Moreover, this alleged statement is not contained in the parties' Agreed Statement of Material Facts, and it was not found as a fact by the trial court. However, IPFW did designate Gaff's complaint, where this allegation is found, as evidence in its motion for summary judgment.

against him, i.e., his termination. Rather, it was an alleged comment made after the adverse action and could not, therefore, have caused the adverse action.[14]

[22] Gaff suggests on appeal that we should leave it to the "trier of fact" to determine whether his complaints related to his sex. Appellant's Br. at 27. But that would require that we disregard IPFW's motion for summary judgment and the undisputed material facts. Those facts show that Gaff's complaints had nothing to do with discrimination on the basis of his sex. Therefore, the trial court did not err in granting IPFW's motion for summary judgment on Gaff's Title VII retaliation claim, and we affirm the judgment of the trial court.

[23] Affirmed.

Barnes, J., and Bradford, J., concur.

---

[14] Thus, even if this case were analyzed under Indiana's heightened summary judgment standard discussed in *Hughley*, 15 N.E.3d at 1003, IPFW would succeed; IPFW's designated evidence, Appellee's App. at 1-2, does negate Gaff's retaliation claim in that it shows Gaff did not engage in a statutorily protected activity as required for a Title VII claim.